## The Baltimore and Ohio Railroad Company
### v. Norris.

[No. 2.092.    Filed March 11. 1897.]

CARRIERS.—*Willful Injury of Trespasser by Conductor.—Liability of Company.*—Where the conductor of a passenger train, while acting within the scope of his authority in ejecting a trespasser from the train, willfully injures such trespasser, the company is liable. *p. 193.*

SAME.—*Passenger.—Offer of Fare.*—Where a person goes to a railroad station to take passage to a certain other station, and, finding the ticket office closed, gets upon the train without a ticket, and without knowledge that the train does not stop at the station to which he desires to go, he is entitled, by payment of the fare to the next regular stopping station, to remain upon the train. *pp. 191–195.*

SAME.—*Tender of Fare by Third Party.—Wrongful Ejectment of Passenger.*—Plaintiff, in company with others, took passage upon a railroad train to go to a certain other station, not knowing at the time that the train did not stop at such station. Plaintiff offered

the cash fare to the station to which he desired to go, which was refused by the conductor. (A companion of plaintiff then stated that he would pay plaintiff's fare to the next regular stopping station, and took out his money, having more than enough money to pay the fare, but the conductor refused to receive the fare and compelled plaintiff to get off the train. *Held*, that the offer to pay the fare was sufficient to make the expulsion wrongful. *pp. 195, 196.*

SAME.—*Provocation.*—*Ejectment of Passenger.*—A railroad company cannot justify the act of its conductor in the ejectment of a passenger, whose fare had been tendered, on the ground that in an altercation at the time between the passenger and the conductor, the passenger accused the conductor of violating a rule of the company on a former occasion, which violation he threatened to report to the company. *pp. 196, 197.*

From the DeKalb Circuit Court. *Affirmed.*

*J. H. Collins* and *James E. Rose*, for appellant.

*S. A. Wood, Daniel M. Link, John F. Shuman* and *Frank S. Roby*, for appellee.

BLACK, J.—The appellee sued the appellant and recovered judgment for $150.00, for the acts of a conductor upon appellant's passenger train, into one of the cars of which the appellee had gone for the purpose of traveling from appellant's station at Garrett to its station at Albion, the alleged wrongs complained of being the assaulting of the appellee with force and violence while in said car, and the act of said conductor in ejecting the appellee from said train with unnecessary force, at night, at a dangerous place, away from any dwelling, station or stopping place, said conductor accompanying his acts with opprobious and indecent epithets applied to the appellee in the presence and hearing of other passengers.

The argument on behalf of appellant is so general in its character that it is not quite clear that any portion of it should be treated as relating properly to the assignment that the court erred in overruling the demurrer to the complaint.

Baltimore and Ohio Railroad Company *v.* Norris.

In the course of the argument in appellant's brief, however, it is said: "If the complaint or the evidence had either shown that the appellee was lawfully upon the train, then the complaint would have been sufficient; otherwise not."

The complaint contained two paragraphs, the second of which alleged many facts in addition to those alleged in the first, and amongst other things, showed, in substance, that the appellee having been prevented by the fact that the ticket office was closed from purchasing a ticket or ascertaining at what places the train stopped to receive and deliver passengers after leaving Garrett, and having seated himself in the car, and taken passage thereon, he tendered to the conductor, when he came through the car, payment of the regular cash fare charged by the appellant for transportation between said towns; that he was then informed and for the first time learned that the train did not stop to take on and deliver passengers at Albion; that he thereupon offered to pay and tendered to the conductor payment of the regular cash fare charged by the appellant from Garrett to the first regular stopping place of the train, before he was ordered to leave the train, and before any active steps had been taken to eject him therefrom; that the conductor wrongfully refused to receive said fare; that by the rules and regulations of the appellant the train was scheduled to stop at the town of Walkerton to discharge passengers, and that the appellee offered to pay his fare to that town, but the appellant wrongfully refused to receive said fare, or to transport him to that town, but wrongfully and unlawfully ejected him from the train, etc.

The first paragraph contained an allegation that after the appellee offered and tendered to the conductor the regular cash fare charged by the appellant

for transportation between Garrett and Albion, the appellant by its said conductor with force and violence assaulted the appellee.

If the first paragraph did not show the appellee to be entitled to be considered a passenger, but showed him to be a trespasser, still the appellant was bound not to injure him willfully.

In *Lake Erie, etc., R. R. Co.* v. *Matthews*, 13 Ind. App. 355, this court said: "The wrong charged is in the nature of a willful injury, and if the appellee was guilty of negligence or was even guilty of being a trespasser, a willful or wanton injury, would not be justifiable. If the appellee was not entitled to ride upon the train, the conductor should have requested him to alight. It was time enough to resort to force and violence when the same became necessary."

Very many authorities might be cited to the same effect.

If it could be held that the second paragraph did not proceed upon the theory of an unlawful expulsion, and did not show the appellee to have been a passenger, but, on the contrary, showed him to have been a trespasser, that paragraph could not, on that account, be held insufficient; for it was alleged therein that the appellee used no force in resisting ejectment, but in all things conducted himself in an orderly, proper and law-abiding manner, and that the conductor, in ejecting him, used unnecessary force, and accompanied his acts with opprobious and indecent language and epithets, which he applied to the appellee in the presence and hearing of a number of persons in the car; that the appellee was greatly humiliated and mortified thereby, and put in great anxiety of mind; and that he was disgraced in the eyes of the persons who heard said language and were not familiar with the facts.

Baltimore and Ohio Railroad Company *v.* Norris.

All such injury is willful, and being inflicted by the conductor while acting within the scope of his authority, the appellant would be liable therefor, whether the injured person were a passenger or a trespasser.

It is said in the recent valuable work, Elliott on Railroads, section 1255, that the company may be held liable, "although the injured person be a trespasser, if its employes, while acting within the scope of their actual authority, willfully injure him or eject him with unnecessary force and violence."

In *Chicago, etc., R. R. Co.* v. *Bills,* 118 Ind. 221, in the original complaint the plaintiff sought to recover for injuries sustained to his person and property while being wrongfully expelled from the defendant's cars. An amended complaint counted upon a right to recover for injuries suffered by being expelled from the train with unnecessary force. It was said by the court: "Both complaints involve the same transaction. The *gravamen,* or substantial grievance complained of in both, is the personal injury suffered by the plaintiff in being ejected from the defendant's train. The original complaint proceeded upon the theory that the plaintiff sustained an injury to his person by being wrongfully expelled from a train on which he had a right to be. The amended complaint is predicated upon the same transaction and injury, but proceeds upon the theory that the plaintiff may have been wrongfully or carelessly on the train, and that he was ejected therefrom with unnecessary force, to his injury. The first complaint was more comprehensive than the last, and embraced elements of damage which were not in the amended complaint, but the last embraced nothing that was not covered by the first."

In the same case it is said by the court, that expulsion from a train with excessive force and violence is equivalent to an assault and battery, and that no degree of carelessness on the part of the person assaulted furnishes any excuse for an unlawful invasion of the right of personal security.

A railroad company is liable to one who has been ejected from a train by the conductor with unnecessary force, though the latter had a right to expel such person. *Chicago, etc., R. R. Co.* v. *Bills*, 104 Ind. 13.

But we are of the opinion that the second paragraph of the complaint proceeded upon the theory of a wrongful expulsion of a passenger, and that it may be held sufficient as such a complaint.

In *Columbus, etc., R. W. Co.* v. *Powell*, 40 Ind. 37, it was held, that, notwithstanding the fact that the plaintiff's intestate got on the train by mistake, the relation of passenger and carrier existed.

Such a person is entitled to be treated as a passenger while on the train. *Cincinnati, etc., R. R. Co.* v. *Carper*, 112 Ind. 26; *Lake Erie, etc., R. R. Co.* v. *Mays*, 4 Ind. App. 413; *Ham* v. *Canal Co.*, 142 Pa. St. 617; *Louisville, etc., R. R. Co.* v. *Garrett*, 8 Lea 438, 41 Am. Rep. 640.

It is true that, in the absence of statutory provisions to the contrary, a railroad company may make rules providing that particular trains shall stop only at certain stations, when it furnishes reasonable means (the want of which is not asserted in this case), of reaching all stations on its road by other trains; and that it is the duty of a person taking passage on a train to inform himself when, where and how he can stop, according to the regulations and time card of the railroad company. If he makes a mistake, not induced by the company, he has no remedy against the company for its enforcement of such rule. Elliott

on Railroads, sections 200, 1576 and 1593; *Ohio, etc., R. W. Co.* v. *Applewhite,* 52 Ind. 540; *Pittsburgh, etc., R. W. Co.* v. *Nuzum,* 50 Ind. 141.

It is the duty of the person about to become a passenger to use reasonable diligence to acquaint himself with such a rule. *Pittsburgh, etc., R. W. Co.* v. *Lightcap,* 7 Ind. App. 249.

We think the second paragraph of the complaint at least showed diligence on the part of the appellee sufficient to relieve him from the imputation of being a trespasser in entering the car, and to entitle him to be treated as a passenger; and, though he had no right to require the conductor to deviate from the rule and to demand to be put down at Albion, he could lawfully remain upon the train as a passenger, by paying his fare to the first regular stopping station, which he offered to do. *Pittsburgh, etc., R. W. Co.* v. *Lightcap, supra.*

There was a special verdict consisting of interrogatories and the answers of the jury thereto.

The action of the court in rendering judgment upon the verdict is not mentioned in argument, but it is contended on behalf of the appellant that the special verdict was contrary to law and not sustained by sufficient evidence, and that the damages were excessive.

A question is suggested in argument as to the manner in which the offer to pay fare to the first stopping place was made. It appears from the evidence that the appellee was accompanied by four other men; that when the appellee had tendered the amount of the fare from Garrett to Albion to the conductor, and had been informed by the latter that the train would not stop at Albion, and before the conductor had ordered him off or had made any attempt to stop the train, one of appellee's companions offered to pay the fare for the whole party to the next stopping place,

and took out his pocketbook and money, having more than sufficient so to pay, but the conductor refused to carry them, and compelled them to get off the train.

In *Ham* v. *Canal Co., supra,* it was held that if an actual tender of fare be made before the train has been stopped the conductor cannot refuse it, no matter who made the tender.

In *O'Brien* v. *New York, etc., R. R. Co.,* 80 N. Y. 236, it was held that where the train has not been stopped for the sole purpose of putting the passenger off, if, before being ejected, he or others in his behalf offer to pay the full fare, the conductor should accept it; and that, if he refuses to do so and ejects the passenger, the company will be liable.

In *Louisville, etc., R. R. Co.* v. *Garrett, supra,* where the conductor had taken hold of the passenger (who had offered, ignorantly and in good faith, a tax receipt in payment of his fare, and was unable to pay), and was walking with him to the door of the car, after ringing the bell to stop the train, and, as he opened the door, another passenger said, "Let him go back; I will pay his fare," and the conductor heard the offer, but ejected the plaintiff, it was held that it was correct to instruct the jury, that if another person offered to pay the fare before ejection from the car, the carrier was bound to receive it and transport the passenger. See *Clark* v. *Railroad Co.,* 91 N. C. 506.

We think the offer to pay fare, shown, as above stated, by evidence, in the case at bar, was sufficient to make the expulsion wrongful.

A question is discussed in the briefs, relating to an altercation between the appellee and the conductor, the evidence of which, it is claimed, showed the appellee to be equally in fault with the conductor. It was in evidence that when the conductor came to the appellee, the latter placed in the hand of the former a

certain sum, being the fare from Garrett to Albion; that the conductor said, "Where the hell are you going?" and the appellee said he was going to Albion; that the conductor said that the train did not stop there; that the appellee said he guessed it did, as he had ridden upon that train before, and it always stopped; that the appellee had ridden on the train before; that the conductor said, "You knew this train didn't stop at Albion" (interjecting an abusive and indecent epithet); "what in the hell are you on this train for?"

Afterward, the conductor having said something to one of the party about losing his job if he should stop, the conductor was told by the appellee that he had paid him the cash fare from Auburn Junction to Albion at a previous date, and that he, the conductor, had accepted the cash, stopped his train and let the appellee off at Albion, and did not give the appellee a cash receipt; and the appellee threatened to report the conductor for what he had done on that previous occasion.

It is claimed, in effect, that this language of the appellee was a sufficient provocation for the conduct of the conductor.

It must be observed that, if the evidence for the appellee be accepted as true, the conductor himself commenced the abusive altercation and was guilty of the first offensive provocation. Under such circumstances we cannot regard the language of the appellee as so disorderly as to authorize his expulsion after the offer to pay his fare. *Louisville, etc., R. W. Co.* v. *Wolfe,* 128 Ind. 347; *Chicago, etc., R. R. Co.* v. *Flexman,* 103 Ill. 546, 8 Am. and Eng. R. R. Cases, 354.

The amount of the damages was so much within the province of the jury that it would be improper for us to interfere with the result reached by them upon that

question. *Louisville, etc., R. W. Co.* v. *Goben*, 15 Ind. App. 123.

We do not find any available error.

Judgment affirmed.