# Broyles *v.* Central of Georgia Railway Co.

*Damages for Injury to Passenger.*

(Decided Dec. 15, 1909. Rehearing denied Feb. 26, 1910. 52 South 81.)

1. *Carriers; Passengers; Injury; Pleading; Relation of Parties.* —A count in a complaint which charges simple negligence only and fails to show that plaintiff was a passenger or was rightfully in the car. is not sufficient, since if plaintiff was a trespasser, the carrier owed him no duty except not wantonly to injure him.

2. *Same; Negligence Charged.*—A count in the complaint against the carrier for injury to a passenger in a wreck. which charges that the wreck was caused by the gross or reckless negligence of the defendant and that such gross and reckless negligence consisted in allowing rotten, unsound and insecure crossties to remain under the rails of the road, charges simple negligence only, and a failure to aver that plaintiff was rightfully on the train, renders the count subject to demurrer.

3. *Same; Riding on Pass; Fraud.*—Where plaintiff and her mother entered a train and on demand of the conductor for fare the mother handed him passes issued for others than plaintiff and her mother, and the conductor took the passes, a fraud was practiced on the carrier and the plaintiff was a trespasser notwithstanding she did not know about the pass, and hence, could not recover for simple negligence.

4. *Same; Evidence.*—Where the issue was whether one injured while .riding on a train was a trespasser because riding on a pass issued to another, the conductor may testify whether it was his duty to compel passengers to identify themselves as the persons named in the pass.

5. *Same.*—Where the carrier claimed that the person injured while riding on the train was a trespasser because riding on a pass not issued to her, the conductor may be properly questioned as to

whether he agreed to let the plaintiff ride without paying her fare or showing some other right to ride on the train, and as to whether he had any right to permit the plaintiff to ride without paying fare or being provided with a pass, as it was competent to show that the conductor did not knowingly permit the plaintiff to ride on a pass not issued to her.

6. *Same.*—Where the plaintiff and her mother were alleged to be trespassers on the train because riding on a pass not issued to them and the pass was given to the conductor by the mother who was traveling with plaintiff, the conductor was properly permitted to state that the mother said in tones loud enough for her daughter to hear, that the pass was for her and her daughter, as the same was not subject to the general objection interposed.

7. *Same; Relation of Parties; Evidence.*—Where the issue is whether the person on the train is a trespasser because riding on a pass issued to another, the conductor can testify as to what a passenger must have to entitle him to ride.

8. *Same.*—Where the litigated issue was whether or not the plaintiff and her mother were trespassers because riding upon a pass issued to another, it was competent to ask the conductor whether plaintiff and her mother were known by him to be the persons to whom the pass was issued, since if they were not they would be trespassers and not passengers.

9. *Same.*—Where the issue was whether the plaintiff was a passenger or a trespasser because riding on a pass issued to another, the plaintiff was properly denied the right to answer a question as to whether it was customary for her to ride on a pass, since the question did not cover the issue.

10. *Same.*—On the issue of whether or not the person injured had a right to ride on a pass tendered to the conductor, a witness may not testify that she thought she had the right to ride on the pass, since uncommunicated thoughts or suppositions are not competent evidence; for the same reason the witness may not testify that she would have gone if her mother had not said anything about the pass, or that she would have paid her fare if demanded and that she had the money to pay her fare.

11. *Same.*—Where plaintiff and her mother were riding on a train on a pass handed by the mother to the conductor, the conductor may testify as to whether the mother in handing him the pass indicated for whom she was tendering the pass, as it was a part of the res gestae.

12. *Same; Relation of Parties; Presumption.*—Although the presumption is that a party boarding a train with money sufficient to pay the fare intends to pay the fare, unless his conduct is such to indicate that he is trying to evade a demand for the fare by secreting himself or otherwise, yet if he fails to pay after demand and after opportunity to pay, then the presumption ceases.

13. *Pleading; In Circle; Replication.*—It is not proper to reply to a plea in an effort to reach a defect in the plea which could have been reached by demurrer to the plea.

14. *Appeal and Error; Harmless Error; Pleading.*—Where the replication contains the same averment as are contained in a count in

the complaint to which the general issue is filed, it is harmless error to sustain demurrer to such replication.

APPEAL from Birmingham City Court.

Heard before Hon. H. A. SHARPE.

Action by Mrs. Mamie Broyles against the Central of Georgia Railway Company. From a judgment for defendant, plaintiff appeals. Affirmed.

The complaint was as follows: Count 2: "Plaintiff claims of the defendant the like sum of $20,000 as damages, for that heretofore, to wit, on or about the 14th day of November, 1906, the defendant was engaged in carrying passengers for hire between Birmingham, Ala., and Montezuma, Ga.; that on or about said date the plaintiff entered a car on one of defendant's train, in the city of Birmingham, Ala., and while riding therein, and while the said car was at or about Kellyton, Ala., the said car became wrecked or derailed, and as a result thereof the plaintiff was thrown against a portion of said car in which she was riding, and was bruised, maimed, wounded, and injured internally and externally, and as a result thereof she has been caused to suffer," etc., a catalogue of which is given. The averments in counts A and B as to negligence are sufficiently set out in the opinion.

The following pleas were filed: (1, 2, and 3). The general issue. (4) "For further answer to each of the counts, separately and severally, defendant says that when plaintiff presented herself as a passenger, and got upon defendant's train at Birmingham, she had in her possession, or her mother, with whom she was at the time, and who undertook to arrange for the transportation of plaintiff, had in her possession, a pass issued by defendant to one Mrs. J. F. Slover and daughter; and the plaintiff, or her mother, Mrs. Little, presented said pass to the defendant's conductor without disclos-

ing that the plaintiff and Mrs. Little were not the parties mentioned, described, and referred to in said pass, but as if they were the parties entitled to ride thereon; and defendant says that plaintiff was not Mrs. J. F. Slover, or Mrs. Slover's daughter, and was not entitled to ride on said pass, and had no other right to be on said train, and was accepted as a passenger and carried upon said train upon the said conduct or act of the plaintiff or her mother in presenting said pass to the defendant's conductor, and the belief of defendant's servant in charge of said train that plaintiff was one of the persons entitled to ride on the pass issued to Mrs. J. F. Slover and daughter; and defendant avers that its servants or agents did not know that plaintiff was not one of the persons entitled to ride on said pass; and defendant says that the plaintiff neither paid nor offered to pay anything for her transportation from Birmingham to Kellyton." Plea 5 sets up the same state of facts, and alleges that the pass entitled Mrs. Slover and daughter, and no one else, to ride thereon, and was not intended for the use of the plaintiff, and did not entitle her to ride thereon, and avers that the plaintiff was neither Mrs. Slover nor her daughter. Plea 7 is in all respects similar to the other two.

The following replications were filed to the pleas: (1) "That if any pass or authority for being upon said train was presented to or accepted by the conductor or agent of defendant, and was a pass or authority for another to ride upon the said train other than plaintiff's mother or herself, it was without the knowledge of plaintiff." (2) "Plaintiff says that she entered upon plaintiff's train at Birmingham, intending to be a passenger thereon from Birmingham to Montezuma, Ga.; that she was in company with her mother, who had said pass or token; that she, the plaintiff did not have pos-

session of said pass or token, and did not deliver the same to the conductor or agent of defendant; but that her mother had the said pass or token, and delivered the same to the said conductor or agent of the defendant, and that the said conductor or agent received the same. Plaintiff avers that she went upon said train or car in good faith, believing that she had a right to be there as a passenger, and not knowing that she had no right to be received as a passenger upon said train or car under said token or pass, and that said conductor or agent of the defendant received from plaintiff the sum of $1 for the right to ride on said car or train."

ARTHUR L. BROWN, for appellant. The single question in this case is whether or not the appellant was rightfully on defendant's train, and the following authorities answer the question in the affirmative: 4 Elliott on R. R., sec. 1578; 96 Pa. St. 256; 132 Pa. St. 1; 39 Neb. 798; 161 Mass. 298; 115 N. C. 602; 82 Am. Dec. 293; 107 Ind. 442; 4 Ind. App. 413; 56 Mo. App. 664; 115 Pa. St. 135; 40 Miss. 391; 16 Ore. 261; 30 Fla. 1; 30 Ill. 9; 1 Sneed 220; 64 Tex. 144; 79 Tex. 371; 118 N. C. 1031; 133 Ind. 346; 75 Am. Dec. 748; 33 Fed. 796; 2 Hutchison on Carriers, sec. 997; Id. 1021-2; 25 A. & E. Ency. of Law, 1081-2-1091; 14 Ia. 363; *B. R. L. & P. Co. v. Brown,* 139 Ala. 389; *A. G. S. v. Yarbrough,* 83 Ala. 241. Counsel then proceed to discuss the assignments of error seriatum with insistence that on the above authorities the court erred in the several matters discussed in the opinion.

LONDON & FITTS, for appellee. The 2nd assignment of error is joint, and unless demurrer was wrongfully sustained to both counts, the assignment is not available.—*Bingham v. Davidson,* 141 Ala. 551; *M. J. & K.*

*C. v. Bromberg,* 141 Ala. 258; *Seaboard A. L. v. Hub-
bard,* 142 Ala. 546; *Western Ry. v. Arnett,* 137 Ala.
414; *A. G. S. v. Clark,* 145 Ala. 459. Count A is patent-
ly bad, for failure to state the relation.—*Stringer's
Case,* 99 Ala. 410; *Crocker's Case,* 95 Ala. 412; *L. & N.
v. Barker,* 96 Ala. 435; *Chewning's Case,* 93 Ala. 23.
The errors made the basis of assignments numbered
from 12 to 19 inclusive, as to the admission of evidence,
and the objection thereto was general in each instance.
—*Sanders v. Davis,* 44 South. 979. The court did not
err in giving the affirmative charge for the defendant
in this case as the person injured was a trespasser, and
the action was in simple negligence.—2 Hutchison on
Carriers, sec. 1172; 28 L. R. A. 749; 108 Fed. 14; 114
Fed. 123; 5 A. & E. Enc. of Law, 486; *A. C. G. & A. Ry.
Co. v. Bates,* 149 Ala. 487; 59 Conn. 531; 45 N. Y. Supp.
861.

EVANS, J.—This action was brought by the appel-
lant, Mrs. Mamie Broyles, against appellee, the Central
of Georgia Railway Company, seeking damages for per-
sonal injuries sustained by her while on one of the reg-
ular passenger trains of defendant en route from Bir-
mingham, Ala., to Montezuma, Ga. The train was de-
railed at Kellyton, Ala., and plaintiff sustained injuries
by reason thereof. There are 22 assignments of error
by appellant to the rulings of the court below upon the
pleadings and the evidence.

The demurrer to the second count of complaint was
properly sustained. Said count charges only simple neg-
ligence and does not show that plaintiff was rightfully
in the car of defendant. Construing said count most
strongly against the pleader, as the law requires, we
must conclude therefrom that plaintiff was a trespasser,
and, therefore, that defendant owed her no duty except

not to willfully, wantonly, or intentionally injure her. —*Beyer v. Louisville & Nashville Railroad Co.*, 114 Ala. 429, 21 South. 592; *James M. Brown & Co. et al. v. Scarborough*, 97 Ala. 316, 12 South. 289.

. The demurrer to counts A and B were properly sustained for the same reasons above given for sustaining demurrer to count 2. The allegations of count A as to negligence are as follows: "Plaintiff avers that said wreck or derailment was caused or brought about by the gross or reckless negligence of defendant, its agents, or employes, whilst engaged in or about the duties of their employment. And plaintiff avers that said gross and reckless negligence consisted in this, to wit, that rotten, unsound, and insecure cross-ties were allowed to remain under the rails of said road at the place where said wreck or derailment occurred, and that said track was in an unsafe condition, thereby causing said wreck or derailment of said train when passing over said defective track. Plaintiff avers that the injuries so received by her were proximately caused by said gross and reckless negligence." We are of opinion that the facts as set out in said count, when construed most strongly against the pleader, do not constitute anything amounting to willfulness or wantonness. This court could not say that an occasional rotten, unsound, and insecure cross-tie amounted to willfulness or wantonness even if known to defendant. We would not be understood as saying that cross-ties might not be rotten, unsound, and insecure to sufficient extent in number and degree to constitute wantonness and willfulness to run a passenger train over them at sufficient rate of speed. But what we say is that the averments in said count A, construed as the law construes them, do not make a case of wantonness or willfulness. We therefore construe said count to allege that plaintiff was a trespasser on

[Broyles v. Central of Georgia Railway Co.]

said car and was injured by the simple negligence of defendant.

We think that count B is subject to the same criticism as count A. The averments in both counts A and B constitute simple negligence.—*Stringer's Case,* 99 Ala. 410, 13 South. 75; *K. C. M. & B. R. R. Co. v. Crocker,* 95 Ala. 412, 11 South. 262; *L. & N. R. R. Co. v. Barker,* 96 Ala. 435, 11 South. 453.

Demurrers to pleas 4, 5, and 7 were properly overruled. The pleas clearly allege facts showing that the plaintiff practiced a fraud upon defendant; or her mother, acting for her, practiced a fraud upon defendant; and plaintiff was enjoying the benefits of such fraud, at the time she received the injuries complained of, and after the conductor in charge of the train had demanded her fare. Such being the case, the defendant was under no duty to carry plaintiff as a passenger, and the relation of passenger and carrier did not exist, and plaintiff was a trespasser. If there are any defects in said pleas, they are not pointed out by the demurrer.

The demurrer to replication 1 was well taken and properly sustained. If the other matters set up in the pleas were true, it is manifestly immaterial whether she knew or did not know the matters set up in said replication. If plaintiff's mother was acting as her agent in tendering said pass for plaintiff, she cannot be heard to say that she did not know the contents thereof and thereby escape the consequences of such fraud.

If there was error in sustaining demurrer to replication 2, it was error without injury, in so much as said replication is a substantial reproduction of the allegations of count E of the complaint, so far as said replication undertakes to show the right of plaintiff to be upon defendant's train. The plaintiff had the full benefit of the matter there pleaded in the issue raised by

the general issue filed to count E. Pleas 4, 5, and 7 were pleas in confession and avoidance, confessing all of said counts except that part which is reproduced in replication No. 2. If said pleas were not a sufficient answer to count E, the defect should have been pointed out by proper demurrer to said pleas as an answer to that count. To allow that kind of pleading would be pleading in a circle, and there would be no end to it. The court, of its own motion, would have a right to eliminate it as a waste of time.

The plaintiff, testifying for herself, stated: "I did not request Mrs. Little to get or furnish me with a pass or transportation, because I would have gone if she had not said anything about a pass." On motion of defendant the words, "because I would have gone if she had not said anything about a pass," were sticken. It has been so often decided by this court that a witness cannot testify to his uncommunicated motive or intention that we deem it unnecessary to cite authorities. Uncommunicated intention or purpose is an inferential fact not capable of direct proof, but must be inferred from facts proven.

Plaintiff, testifying for herself, was asked by her attorney, "I will ask you if you had money to pay your fare if it had been demanded." Witness had been allowed to testify that she had with her a certain amount of money, and she could not testify to her secret intentions or purposes. The court properly sustained the objection to the question. So, also, to the following question asked plaintiff by her attorney: "I will ask you whether or not you would have been willing to have paid your fare if it had been demanded?"

The court also properly ruled in sustaining objection to the following question propounded to plaintiff by her counsel: "I will ask you if it was not customary for

you all to ride on passes?" The question did not go far enough to state a custom that would include the present case; that is, to ride upon passes issued for other people upon which plaintiff and her mother had no right to ride, and that it was done with the knowledge and consent of the proper authorities of the defendant corporation. So, also, were objections properly sustained to the following questions asked the same witness by her counsel: "Did you know of your mother having a pass before this time over this road?" Whether she did or not was clearly immaterial. So, also, the following question asked the same witness by her counsel: "I will ask you whether you supposed or thought when you boarded the car that you had a right to ride on the pass which was held by your mother?" Uncommunicated thoughts and suppositions cannot be testified to.

The defendant asked his witness T. L. Gordy, the conductor who took up the fares upon this occasion, "At the time the pass was handed to you, was any information given you that the plaintiff was not the person named in the pass?" The plaintiff objected to this question, and the court overruled the objection, and plaintiff excepted to the ruling of the court. We think the court properly overruled the objection. If the mother of plaintiff and the plaintiff were not known to witness, and the mother handed to witness a pass in due and proper form, properly signed, and pointed out plaintiff, who was sitting on the same seat with her, as one of the persons to ride upon said pass, the conductor had the right to presume that the mother and plaintiff were the persons named in said pass; and to hand in such a pass and conceal their identity by their silence was a fraud and entirely relevant to issues raised by the fourth, fifth, and seventh pleas. The plaintiff mov-

ed to exclude the following testimony of the witness
Gordy: "You have a ticket, cash fare, or pass, or some-
thing the conductor can turn into headquarters, show-
ing that each passenger was entitled on that train."
The above was an answer to the following question:
"What must a passenger have to entitle him to ride on
the train?" The question was also objected to, but the
overruling of the objection is not assigned as error.
There was no error in refusing to exclude said testi-
mony. The conductor of a train, whose duty it is to
determine who are passengers and who are not, is pre-
sumed to know what a passenger must have in order
to entitle him to ride on the train and thereby become
a passenger, and that is one of the material inquiries in
this case. Defendant asked the witness Gordy the fol-
lowing questions: "At the time the elderly lady handed
you the pass, how, if in any way, did she indicate for
whom she was tendering the pass?" The objection to
this question was properly overruled, as it would natur-
ally call for evidence entirely legal and proper. It call-
ed for evidence as to a part of the actual transaction
whereby defendant was allowed to ride upon said train.
It was a part of the res gestæ.

Defendant asked the witness Gordy, "Did you agree
for her to ride without paying her fare?" The objec-
tion to this question was properly overruled because it
was inquiring as to right of plaintiff to be upon the
car, as was also objection to the following question and
for the same reason: "I will ask you if you agreed for
the plaintiff to ride without paying her fare, or showing
some other right to ride on the train?" Also, the objec-
tion to the following question: "I will ask you under
the rules of the company if you had any right to permit
plaintiff to ride without she was paying her fare or be-
ing provided with a pass?" If any inference could

arise from the evidence that he was knowingly permitting her to ride without paying her fare or having a pass, then it was proper to show that he, as agent of defendant, had no such authority whereby he could establish the relation of carrier and passenger between defendant and plaintiff. It was evidently competent under the issues of this case that its agent did not knowingly consent for plaintiff to ride as a passenger without paying her fare or to ride upon a pass issued to another and that he had no authority to do so.

Plaintiff assigns as error the overruling of her objection to the following question asked by defendant of the witness Gordy: "Did the lady make the statement for herself and daughter?" The witness had just stated that "the lady handed me the pass and said it was for herself and daughter" in a tone loud enough for plaintiff to hear. The answer of the witness to the said question objected to was: "O, just an ordinary tone. It was loud enough for plaintiff to have heard what she said." It is evident from this answer that the witness did not understand, and did not answer the question; but, if it is an answer to the question, then the question was properly allowed. In either event there was no reversible error. The grounds of objection were that it was incompetent, immaterial, and irrelevant. It was not subject to objection on these general grounds.

The following question propounded to the witness Gordy by defendant was objected to by plaintiff: "Are you by the rules required to compel persons who tender passes on your train to identify themselves as the persons named in the passes?" The objection was properly overruled, as it called for evidence pertinent to the inquiry as to whether she was or could have been, under any inference to be drawn from the evidence, a legal passenger on said train.

The twentieth assignment of error is the same as the third, fourth, and fifth assignments, which have already been considered.

The court upon request of defendant, gave the general affirmative charge for defendant in writing, viz.: "If the jury believe the evidence, you will find for the defendant." The plaintiff now assigns the giving of said charge as error. As stated in the briefs of both sides to this suit, "The whole question in the case is whether or not appellant was rightfully on defendant's train." It is proper to add, "at the time the injury to plaintiff was inflicted." The decision of this question in the case depends upon whether or not, at the time of the wreck, the relation of carrier and passenger existed between appellee and appellant. There can be no dispute, and its has been universally so held, that to create this relation there must be a contract to that effect either express or implied. There can be no doubt but that the relation exists by implied contract from the moment a person enters the passenger coach of a regular passenger train with the bona fide intention of becoming a passenger and of paying fare according to the rules and regulations of such carrier, when the same is demanded by the proper person, and has with him the means of doing so. In this case we are not concerned with the question of good or bad intent. Under the facts of this case, did the relation of carrier and passenger exist at the time of the accident or injury? Plaintiff's fare had already been demanded by the conductor, and her mother, in her presence, had given the conductor a pass, which was issued for the benefit of other parties than plaintiff and her mother, and which plaintiff and her mother had no right to ride on. The fact that plaintiff's mother and plaintiff were not the persons named in said pass was not known to the con-

[Broyles v. Central of Georgia Railway Co.]

ductor, nor was it disclosed by either the mother or
plaintiff; and the mother pointed out plaintiff as the
other person entitled to ride on said pass besides her-
self. The conductor took the pass as authority for them
to ride on said train, and plaintiff continued to ride
thereon. Some time after this transaction the accident
occurred from which the injury resulted. Can the plain-
tiff claim that the facts of this transaction made a con-
tract weherby the relation of passenger and carrier was
created between the plaintiff and defendant, of which
she can take advantage in this suit. We think that the
facts show a fraud from which the plaintiff can derive
no benefit in this suit. Even if the conductor had
known the parties and connived with them to beat the
defendant out of the fare due for the transportation,
the rule would be the same. As stated in the case of
*Coondran, Adm'x, etc., v. Chicago, Milwaukee & St.
Paul R. Co.,* 67 Fed. 523, 14 C. C. A. 508, 28 L. R. A.
752: "The law will do nothing to stimulate and en-
courage fraud and dishonesty, and that would be the
effect of holding that a railroad company owed to one
riding on its trains, under the conditions named, the
duties and obligations it owes to a passenger who has
honestly paid his fare. Railroad companies are as much
entitled to protection against fraud as natural persons.
It is a matter of common knowledge of which the court
will take judicial notice, and of which the public are
bound to take notice, that railroad passenger trains are
operated to carry passengers for hire * * * It is equally
well known that the authority of a railroad conductor
does not extend to the carrying of passengers without
the payment of the regular fare. * * * One riding on a
train by fraud or stealth, without the payment of fare,
takes upon himself all the risk of the ride, and if in-
jured, by an accident happening to the train, not due

[Southern Railway Co. v. Harrington.]

to recklessness or willfulness on the part of the company, he cannot recover." Ordinarily, when a person boards a train with money sufficient to pay his fare, it will be presumed that he intends to pay his fare until his fare has been demanded, unless his conduct should be such as to show that he was trying to evade the demand being made on him by secreting himself or otherwise; but after demand is made, and he has the opportunity of paying, and he fails to do so, the presumption ceases unless some good excuse is shown for not then paying.

The affirmative charge was properly given for the defendant.

Affirmed.

DOWDELL, C. J., and ANDERSON and SAYRE, JJ., concur.