Hillsborough, } No. 3382.
May 4, 1943. }

WILLIAM H. CRAIG, *Adm'r v.* BOSTON & MAINE RAILROAD, & a.

STELLA MIJAL, *Adm'x v.* SAME.

FRANCOIS SOUCY, *Adm'r v.* SAME.

*Chretien & Craig, Laurence I. Duncan* and *Robert W. Upton* (*Mr. Duncan* orally), for Craig.

*McLane, Davis & Carleton* (*Mr. Robert P. Bingham* orally), for the defendant railroad.

*Devine & Tobin*, by brief, for the defendant Marcotte.

BURQUE, J. Marcotte's negligence is conceded. The only question raised by the motions for nonsuits and directed verdicts is whether there is any evidence of causal negligence on the part of the railroad. The railroad runs north and south, and that part of the road upon which the plaintiffs were traveling in defendant Marcotte's car, before reaching the crossing, runs also north and south, parallel to and on the westerly side of the railroad, approximately thirty-five feet away, and between the road and the Merrimack river are eight cottages. The road is known as Chauncey Avenue and is a narrow, one lane road, varying from seven to eight feet in width. The general direction is north and south. The railroad is crossed at right angles, the curve on Chauncey Avenue being to the right as one travels from the cottages toward the crossing. The latter is protected only by a stop sign, located on the east side of the road, and fifty-six feet away from the westerly rail of the north bound track. The surface of the road is gravel, soft and muddy in the springtime of the year. All of the above facts were well known to the fireman. The cottages are occupied about four months in the year, during the summer season. One was occupied continuously for a period of seven or eight years up to a few years prior to the accident. No one was occupying any of the cottages at the time of the accident.

The crossing has been used by people going to and from the cot-

tages for over thirty years. Also by people going in swimming. The road was never laid out, nor was it ever taken care of by the city. The court submitted to the jury the question, whether the way was public or private. If public, the jury was instructed that the statutory signals were required to be given, and if failure to do so was a contributing factor in causing the accident, the railroad was liable. If the jury found the way was a private one, the statutory signals were not required to be given, but the railroad was still in duty bound to signal the approach of its train, if due care under the circumstances required it. (No signals whatever were given.) There was no error in these instructions. The question raised by the railroad is that there was no evidence warranting the submission of the proposition whether the crossing was public.

We do not have to pass on that. All we have to do is to consider whether there was sufficient evidence to warrant the jury in finding that the fireman (who was the one in the engine to observe the automobile), in the exercise of due care, should have notified the engineer sooner to stop, or himself have rung the bell (which he could have done), or call for the engineer to give warning signals instead of telling him to stop.

On the day in question the defendant Marcotte picked up the three decedents, went to the banks of the river to see the height of the water, and on their way back the accident happened. Both the train and the automobile were proceeding in a northerly direction, the train traveling fifty miles per hour and the automobile ten to twelve miles per hour. At a distance of about one thousand feet south of the crossing the fireman testifies he saw the automobile, then about two hundred feet from the crossing. We need only to consider the fireman's own testimony to determine whether the railroad can be charged with negligence. Succinctly here is what he says: "I kind of had an idea" — "if the automobile and the train continued on at the same speeds there might be a collision"; and that "when the automobile went by the stop sign," I "reached the conclusion there was danger of a collision."

The automobile was not traveling faster than ten to twelve miles per hour, up a slight grade from the stop sign to the tracks, on a gravel road and could have been stopped almost instantly. It is reasonable to assume that if given a signal the operator of the automobile could have stopped and avoided the accident. (*Dowse* v. *Railroad*, 91 N. H. 419, 423.) The jury could so find. There was no evidence in the case to prevent such a finding.

But the defendant argues, and correctly, that there is no duty imposed upon the railroad to stop its train when approaching a railroad crossing, either public or private, until such time as it becomes apparent that the highway traveler is not going to stop and give the train its right of way, citing *Morier* v. *Hines*, 81 N. H. 48, 51, 52. Unquestionably this is the law. But the facts in that case differ from those in the instant case. There the engineer's testimony was not available, he having died prior to the trial, and the court said: "The situation which caused the engineer to act when he did is not disclosed, but there is no evidence upon which he could be found negligent for failing to give precedence to the motorcycle." Here there is, as seen above, evidence from which it could be found the fireman did not act when and how he could and should have acted.

If the automobile was traveling at ten miles per hour, it traveled one hundred and forty-five feet before it reached the stop sign, while the train traveled seven hundred and twenty-five feet, and was then two hundred and seventy-five feet from the crossing, while the automobile was fifty-six feet away from the westerly rail of the north bound track. If the automobile was traveling twelve miles per hour the train was approximately three hundred and thirty feet away from the crossing when the automobile passed the stop sign and the fireman realized there was danger of a collision. The jury could well find there was, in either event, time for saving action, and that ordinary caution should have dictated the giving of warning signals. The crew men say this could be done instantly. They had approximately four seconds to act. The jury could find this was ample time.

The jury could also find that the automobile did stop at the stop sign, and that from then on it proceeded at a speed of four to five miles per hour, as testified to by Marcotte. If this is so, this would place the engine at a still further distance from the crossing, and give more time for protective action when the fireman says he realized a collision was likely to occur. "That an engineer [or fireman] may be found negligent for failing to sound [or call for] a warning whistle after discovering a traveler in a dangerous situation, is well settled by the decisions in this state." *Jones* v. *Railroad*, 83 N. H. 73, 82, and cases cited. Whether the fireman was at fault in not giving or calling for a warning instead of asking the engineer to stop, when he knew, as he says, it was too late to stop the train, presents the problem "whether, under the circumstances, he thus measured

up to the standard of due care, [and] was a jury question." *Jones* v. *Railroad, supra.*

It was not necessary for the jury to accept the fireman's testimony that the engine was only one hundred and seventy-five feet south of the crossing when he realized the automobile would not stop and that a collision was imminent. Conflicting evidence in the case warranted the findings suggested above.

Contributory negligence was not advanced or relied upon as a ground for nonsuit or directed verdicts. Reliance was placed solely on lack of evidence to show causal negligence on the part of the defendant railroad. The latter's counsel was asked to specify other grounds, if any, to be advanced and relied on, but he did not do so. In some confirmation of the waiver, later when the court charged the jury that there was no claim or evidence of negligence on the part of the decedent, no exception was taken. This constitutes a waiver of defendant's present claim, briefed and argued, of contributory negligence, and ground for nonsuit and directed verdicts. The motions for nonsuits and directed verdicts were properly denied.

Plaintiff's exception to the examination of the witness Prud'-Homme avails him nothing. It appears the witness was the owner of a restaurant where beer was served. The decedent Jane Cozzi came into his place of business in the morning, had breakfast, and stayed there until about one o'clock. During the forenoon the two other decedents came in and sat in a booth with her. The question was whether they had had beer while there. The witness said he did not know. At a previous trial he had testified Mrs. Cozzi had had beer with her breakfast, and the other two men also had had beer while there. It also appeared the witness had told Inspector Foley these people had had beer and made a nuisance of themselves.

The witness was called by defendant Marcotte. On cross-examination by railroad's counsel, the court allowed the record of the previous trial to be used to contradict the witness and to impeach him. Likewise testimony of Inspector Foley was admitted for the same purpose. The jury was instructed that such testimony was not evidence of the facts testified to but simply for the purpose of contradiction and impeachment. There was no error in this. The situation is far different from that in *Carbone* v. *Railroad,* 89 N. H. 12, relied upon by the plaintiff. Plaintiff seems to claim defendants introduced the evidence to show intoxication of the decedents. The record does not support the claim. Moreover the evidence is di-

rected mainly to the issue of contributory negligence, which issue was withdrawn from the consideration of the jury.

Plaintiffs requested instructions to the effect that there was no evidence defendant Marcotte or the passengers were intoxicated. The instruction was not given. There was no error in this. Statements made by one witness as to the consumption of beer having been admitted only for the purpose of contradiction, the issue of contributory negligence having been withdrawn and absence on the part of the railroad of any claim of intoxication, rendered the giving of the requested instructions unnecessary. No prejudice could result therefrom, particularly where the jury was told to decide the case on the evidence. It is to be assumed the instructions were followed. It was within the court's discretion to decide whether the instructions should be given or not.

Testimony as to the character of the deceased was properly admitted. It appears that she had been separated from her husband and children the first time for a period of five months, and the second time sometime prior to March, 1938; that a decree of legal separation, effective July 1, 1938, was granted the husband, together with the care, custody and education of the three children; that she had worked but one day during the five months previous to the accident; that she had been an inmate of a house reputed to be a disorderly house; that she had the reputation of being immoral, and that she had pleaded guilty to lewd and lascivious conduct and served time therefor. The evidence had a tendency to show a lack of disposition to earn a legitimate living. It, together with a total absence of evidence of love and affection for her children and of contribution at any time to their support, even when she worked at times in the years 1930, 1933 to 1935, 1936 and 1937 had a bearing on the proposition whether she would ever have done anything for them had she lived. The court instructed the jury to the effect that in the absence of such evidence the element of damages which includes probable contribution to the support of dependents was withdrawn from their consideration. The instruction was proper. *Morrell* v. *Gobeil*, 84 N. H. 150.

*Judgments on the verdicts.*

All concurred.