[No. 32817. *En Banc.* November 4, 1954.]

ALICE FLEMING, *Individually and as Administratrix, Respondent,* v. THE CITY OF SEATTLE, *Appellant.*[1]

[1]Reported in 275 P. (2d) 904.

*A. C. Van Soelen* and *Arthur Schramm,* for appellant.

*Reischling & Chan,* for respondent.

HAMLEY, J.—Leo P. Fleming died as a result of injuries sustained when he fell from a city of Seattle transit bus, after being pushed by the operator. His widow, Alice Fleming, brought this action for wrongful death on behalf of herself and their three children.

At the first trial, the jury brought in a verdict of $11,000, but the trial court granted a new trial because of errors in the instructions. At the second trial, the jury awarded plaintiff a verdict of $55,580, segregated as follows: For the widow, $30,000; for the three children, $7,000, $8,000, and $10,000, respectively; for funeral expenses, $580. The trial court reduced the amount awarded to the widow to $12,000, and, after plaintiff consented to the remission, denied the alternative motions for judgment notwithstanding the verdict or for a new trial. Judgment in the sum of $37,580 was thereupon entered for plaintiff. Defendant appeals.

Under appellant's first assignment of error, it is argued that Fleming was not a passenger at the time of the accident, and that the motion for judgment n.o.v. should therefore have been granted. In the alternative, it is argued under assignments of error Nos. 3, 7, and 8, that the question of Fleming's status on the coach was for the jury, and that the trial court erred in instructing the jury, as a matter of law, that he was a passenger. These assignments will be considered together.

When Fleming boarded the bus at Seventh avenue and Union street, in Seattle, he was in an intoxicated condition, and was unsteady on his feet. He had money to pay his fare, but failed to do so when he entered the bus. He went directly to a seat on the left side of the coach, three or four seats behind the driver. He then fell asleep, or half asleep, or at least appeared to have done so. The driver proceeded to the next stop, and there called back to Fleming to come forward and pay his fare. Fleming made no response. The bus made one other stop, and the driver made the same

request. Fleming gave no indication that he heard the driver, and did not pay his fare.

When the coach reached Ninth avenue and Madison street, the operator again asked Fleming for his fare. Receiving no response, the operator went back to where Fleming was seated. He again asked for the fare, and this time Fleming said, "Didn't I pay?" Fleming also asked for information about Harborview hospital. The driver told him that after he had paid his fare he would tell him what he wanted to know. The driver also observed that, "All you people want to do is ride the bus for free."

Fleming remarked that the driver was a "mean man" or a "tough guy," whereupon the driver seized him by the lapels and raised him to his feet. Fleming then consented to pay his fare, and reached into his pocket for some money. In doing so, he dropped a coin on the floor of the bus. When he reached down to pick it up, he twice nudged or bumped into the driver. The driver then pushed Fleming on the shoulder toward the fare box and said, "Go right down there and pay your fare," or words to that effect.

It was this push which resulted in Fleming's death. He lost his balance and staggered toward the fare box, struck the rail guarding the box, and caromed backwards out the open front door. He received head injuries which resulted in his death. The driver testified that he did not push Fleming for the purpose of ejecting him from the bus.

█ █ The relationship of carrier and passenger arises from contract, express or implied. *Fenlon v. Chicago, Milwaukee & St. P. R. Co.*, 99 Wash. 289, 169 Pac. 863. Such a contract is in existence when a person, intending to become a passenger and pay his fare when demanded, having the means to do so, is permitted to board the coach. *Broyles v. Central of Georgia R. Co.*, 166 Ala. 616, 52 So. 81; *Gulf, M. & N. R. Co. v. Bradley* (Miss.), 142 So. 493.

█ Fleming boarded the coach intending to become a passenger, and had the means to pay his fare. While he did not immediately pay his fare, and failed to respond to several demands that he do so, he consented to pay and was

endeavoring to do so prior to being pushed. His actions thus establish his intention to pay. The several cases which have been cited, concerning the presumption or lack of presumption of such intention, are therefore inapplicable.

■ Had the driver pushed Fleming in an effort to eject him for nonpayment of fare, prior to any tender of the fare, it may be that the relationship of carrier and passenger could be regarded as never having come into existence. A tender made after steps have been commenced to remove the person comes too late, and the operator or conductor is justified in removing the person from the coach. *Gates v. Quincy, O. & K. C. R. Co.*, 125 Mo. App. 334, 102 S. W. 50.

■ But where a person who has not paid his fare on demand tenders it before any steps are taken to remove him from the coach, the fare must be accepted and the relationship of carrier and passenger exists. *Baltimore & O. R. Co. v. Norris*, 17 Ind. App. 189, 46 N. E. 554; *Mangum v. Norfolk & W. R. Co.*, 125 Va. 244, 99 S. E. 686, 5 A. L. R. 346.

■ Here, the tender was made before Fleming was pushed. Moreover, as the driver himself testified, no effort was made to eject Fleming. Under the facts summarized above, we therefore hold that the trial court correctly instructed the jury, as a matter of law, that a relationship of carrier and passenger existed at the time Fleming was pushed by the driver.

Under the first assignment of error, appellant also argues that it should be held, as a matter of law, that appellant's driver was not negligent, or that such negligence, if any, was not a proximate cause of the accident, because the sustaining of injuries by Fleming as a result of being pushed by the operator was not reasonably foreseeable.

In contending that the sustaining of injuries by Fleming was not reasonably foreseeable, appellant argues that the act of the driver was an automatic reaction after being twice bumped by decedent. It is further argued that there was nothing in decedent's condition at the time to indicate that, upon being pushed, he would stagger backward fourteen feet or more and strike the fare box and railing in such a

manner as to turn him around and cause him to fall out of the door of the bus.

There was testimony to the effect that the operator's act of pushing Fleming was not an automatic reaction, but was done in a spirit of contempt and anger, for the purpose of directing Fleming to the fare box. It is undisputed that Fleming was obviously intoxicated and unsteady on his feet. The operator knew that the front door of the bus was open at the time. Further, appellant's argument is based on the assumption that Fleming's seat was fourteen feet from the fare box, when in fact the distance was not more than seven feet.

■ Whether foreseeability is being considered from the standpoint of negligence or proximate cause, the pertinent inquiry is not whether the actual harm was of a particular kind which was expectable. Instead, the question is whether the actual harm fell within a general field of danger which should have been anticipated. *Berglund v. Spokane County*, 4 Wn. (2d) 309, 103 P. (2d) 355; *McLeod v. Grant County School Dist.*, 42 Wn. (2d) 316, 255 P. (2d) 360.

■ The jury was warranted in finding that the general field of danger which should have been anticipated here was that decedent was in such an intoxicated condition that, if thrown off balance, he might fall in such manner as to injure himself. The actual harm sustained by decedent fell within this general field of danger. It therefore could not be held, as a matter of law, that the injuries sustained by Fleming were not a reasonably foreseeable result of the push which he received from the driver.

■ Under assignment of error No. 6, appellant contends that its requested instruction on foreseeability should have been given to the jury.

In our opinion, instruction No. 11, given by the court, adequately covered the subject matter of the requested instruction. The instruction which was given told the jury that a person is responsible for the natural and probable consequences of his act according to ordinary and usual experience, but is not responsible for a consequence which is merely possible according to occasional experience.

The evidence delineated above, with respect to the push given Fleming by the driver, also disposes of the ninth assignment of error, concerning the trial court's refusal to give a requested instruction on self-defense. In view of the uncontradicted evidence, such an instruction would not be applicable in this case.

Assignment of error No. 4 relates to the trial court's refusal to give appellant's requested instruction No. 1. This instruction would have told the jury that, while one of the alleged acts of negligence was the stopping of the bus seven feet from the curb, this would not be negligence on the part of the bus operator.

Appellant excepted to the court's instruction No. 1, in which this allegation was submitted to the jury as one of the issues which it had to determine. Following a colloquy with the court, appellant withdrew this exception. Having done so, we do not believe that appellant may now complain because the issue in question was not withdrawn by the giving of the requested instruction.

In any event, it seems to us highly unlikely the distance of the bus from the curb entered into the jury's deliberations. The negligence which was emphasized in all of the evidence was the pushing of an intoxicated person in the general direction of the open bus door. The submission of the issue concerning the distance of the bus from the curb was therefore not prejudicial.

Assignment of error No. 5 has to do with the trial court's refusal to give a requested instruction withdrawing the allegation of negligence based on the driver's act in leaving the bus door open.

While it may not ordinarily be negligence to leave the doors of a bus open and unattended, the jury could well find that it was negligence to do so under the circumstances of this case. We are of the view that it was proper to submit this issue to the jury.

Under the tenth assignment of error, it is urged that a new trial should have been granted because the damages were so excessive as unmistakably to indicate that the verdict must have been the result of passion or prejudice.

██ It is to be noted that, under this assignment of error, we are not called upon to decide whether the trial court was warranted in reducing the award to the widow from $30,000 to $12,000, or the question of whether it should have made a still greater reduction in the award. Our sole inquiry here is whether the jury award was so excessive as unmistakably to indicate that not only the amount of the damage award, but also the finding as to liability, must have been the result of passion or prejudice. Superior Court Rule 16(5), 34A Wn. (2d) 117; *Anderson v. Dalton,* 40 Wn. (2d) 894, 246 P. (2d) 853. If the award unmistakably indicates this kind or degree of passion or prejudice, a new trial should have been granted. *Kellerher v. Porter,* 29 Wn. (2d) 650, 189 P. (2d) 223.

The instructions as to damages (which became the law of the case) permitted the jury to consider pecuniary loss due to loss of services, attention and care, comforts, convenience, love, affection, companionship, society, and consortium.

The evidence bearing upon these elements of damage are as follows: Decedent was sixty-three years of age, and had a life expectancy of 12.68 years at the time of the accident. For six or seven years prior thereto, he had engaged in no gainful employment. He was suffering from a coronary insufficiency, hypertension, generalized arthritis, and gall bladder disease. He had been confined in the city jail on two occasions, and in the city rehabilitation camp on one occasion, on convictions of drunkenness.

Because of decedent's physical ailments, Mrs. Fleming was the breadwinner for the family, and decedent "ran the house." He did housework, including the family laundry, and pressed the boys' clothes. He cooked for the children, helped them with their schoolwork, and oftentimes assisted the boys in delivering newspapers. The testimony was that he was neat and clean in his personal habits, and was an affectionate and considerate father and husband. The children were fourteen, thirteen, and eleven years old, at the time of their father's death.

On the basis of this evidence, the jury, as noted above, awarded plaintiff $30,000 for herself, and $7,000, $8,000, and $10,000, respectively, for the three children.

█ It may or may not be that these awards are so excessive as unmistakably to indicate passion or prejudice in fixing the amount of the verdict. They are not, in our opinion, so excessive as unmistakably to indicate passion or prejudice in fixing liability. The principal considerations which have led us to this view are as follows: (1) The instruction as to damages was broad in scope and permitted the jury to evaluate many factors in addition to earning power; (2) the evidence was such that the jury could give application to the broad scope of the damage instruction; (3) the trial court found that there was no passion or prejudice, and granted the reduction in the award only on the ground that the over-all verdict "is a trifle excessive"; (4) the question of liability was not a particularly close one.

The trial court did not err in denying the motion for a new trial on all issues in the case.

Appellant's second assignment of error raises the question of whether the trial court erred in excluding certified copies of eleven justice court convictions of decedent on charges of drunkenness.

In each case, these convictions, which were entered on various dates between April 7, 1949, and February 5, 1952, were based on pleas of guilty. The convictions further show that decedent had been sentenced to a total of two hundred forty days in jail, and had been fined a total of ninety dollars. Many of the sentences and much of the aggregate fine had been suspended.

We have held that the record of a conviction is admissible for the purpose of affecting the credibility of a witness (RCW 5.60.040 [cf. Rem. Rev. Stat., § 1212], *Haley v. Brady,* 17 Wn. (2d) 775, 137 P. (2d) 505, 146 A. L. R. 859); or to prove the fact of conviction when such fact is material without regard to the facts upon which the conviction is based. *Minch v. Local Union 370,* 44 Wn. (2d) 15, 265 P. (2d) 286. We have also held that a plea of guilty to a criminal

charge, by a party to a civil action which involves the same subject matter, constitutes an admission of a party. *Konshuk v. Hayes,* 150 Wash. 565, 273 Pac. 957; *Atkins v. Churchill,* 30 Wn. (2d) 859, 194 P. (2d) 364; *Reynolds v. Donoho,* 39 Wn. (2d) 451, 236 P. (2d) 552.

In the instant case, the convictions were not offered for any of these purposes. Here, the evidence was offered only as bearing upon the question of damages. Appellant sought to prove by these convictions that Fleming had a habit of intoxication, and was, for that reason, less valuable to his family than would otherwise be the case. The question of the admissibility of convictions for such a purpose has not previously been determined by this court.

■ Evidence tending to prove a habit of intoxication is clearly relevant on the question of damages in a case of this kind. *Lundberg v. Baumgartner,* 5 Wn. (2d) 619, 106 P. (2d) 566. We know of no better way to prove a habit than by proving a series of acts in sufficient number to rebut the inference that the acts were mere casual happenings. See 1 Wigmore on Evidence (3d ed.) 693, 709, §§ 203, 210a. But may instances of intoxication of a person who is not a party to a civil action, and who is not available as a witness, be shown by proving convictions of drunkenness?

The general rule appears to be that a judgment of conviction is not admissible in a civil case as evidence of the facts upon which it is based. 31 A. L. R. 261 *et seq.,* annotation; 18 A. L. R. (2d) 1287 *et seq.,* annotation by W. E. Shipley. We have found no decision of this court applying this rule, though it has been referred to in *Reynolds v. Donoho, supra,* and *Billington v. Schaal,* 42 Wn. (2d) 878, 259 P. (2d) 634. The exclusion of such evidence has usually been based upon the difference between the civil and criminal actions with respect to objects, issues, parties, procedures, and degree and burden of proof required.

There seems to be a present trend in favor of the admission of such evidence, as persuasive but not conclusive evidence. As respondent points out, however, most of the cases which follow this trend involve situations where a con-

victed criminal is seeking to take advantage of rights arising from the crime for which he has been convicted. 18 A. L. R. (2d) 1287, 1300, *supra*. No such situation is involved here.

It has been urged that the trend away from the general rule of exclusion should be broadened to include other types of cases. 5 Wigmore on Evidence (3d ed.) 687-694, § 1671a. See, also, The American Law Institute's Model Code of Evidence, Rule 521, p. 280.

In three cases which have come to our attention, proof of prior convictions of a decedent in a wrongful death action have been held admissible on the question of damages. See *Holmberg v. Murphy*, 167 Minn. 232, 208 N. W. 808; *Townsend v. Armstrong*, 220 Iowa 396, 260 N. W. 17; *Craig v. Boston & Maine R.*, 92 N. H. 408, 32 A. (2d) 316. We have been referred to no cases which reach a contrary result.

Respondent has sought to distinguish the *Holmberg* case from the one now before us. She also contends that the precedent value of that case has been undermined by the later decision of the Minnesota court in *True v. Citizens' Fund Mut. Fire Ins. Co.*, 187 Minn. 636, 246 N. W. 474. In our view, neither of these contentions has merit.

█ It is our opinion that the *Holmberg, Townsend,* and *Craig* cases announce a rule which is consonant with "practical good sense," as Professor Wigmore would put it. 5 Wigmore, *supra,* 694. Appellant was entitled to get before the jury the information regarding decedent's habits as to sobriety. In our judgment, the certified copies of the justice court convictions constituted a trustworthy and acceptable way of doing this.

█ In order to prove these convictions, it was not necessary to produce a court official. The procedure followed meets the requirements of the statute relative to the admission in evidence of the records and proceedings of any court. RCW 5.44.010, Rem. Rev. Stat., § 1254. See, also, *State v. Beard*, 148 Wash. 701, 269 Pac. 1051.

█ Respondent's contention that these exhibits were properly excluded under the so-called "dead man's statute"

(RCW 5.60.030, Rem. Rev. Stat., § 1211) is without merit. That statute operates to bar the testimony of interested witnesses and parties to the record as to statements by or transactions with a deceased.

 Respondent argues further that the exhibits were properly excluded because appellant offered no testimony which would identify or connect such records with decedent. At the trial, however, when these exhibits were offered, no objection was made on this ground. Respondent's counsel advised the court that his objection had nothing to do with the way in which the exhibits were presented for admission. The exhibits were offered and refused in the absence of the jury, and the point was never reached where appellant would have been called upon to identify or connect the conviction with decedent. Appellant's counsel told this court, during oral argument, that he was prepared to establish such identity, using fingerprints. Respondent's objection, made here for the first time, is not well taken.

 Respondent argues that, in any event, the exclusion of the proffered judgments was not prejudicial, as the facts which they tended to prove were merely cumulative.

Three witnesses testified that they knew of their own knowledge that Fleming had been convicted on at least five occasions in the period from November, 1950, to March, 1952, and had served time in the city jail and the Seattle police alcoholic rehabilitation camp. The rejected exhibits would have established at least six additional convictions for drunkenness, five of them in the year 1949.

Since the purpose of the evidence was to establish a long-standing habit of drunkenness that would probably have continued if Fleming had lived, the rejected evidence was not cumulative. In our opinion, the jury could have been very materially influenced by the knowledge that Fleming's habit extended over this greater period, and had resulted in these additional convictions. Respondent's strenuous and successful efforts to keep these exhibits from the jury is indicative of her own estimate of their prejudicial effect upon her case.

We therefore conclude that the trial court erred in excluding the exhibits in question. This error, however, affects the judgment only with regard to the amount of the award, and does not warrant a new trial on the question of liability.

In view of the fact that this case must be remanded for a new trial as to damages, it is not necessary to consider appellant's final contention (eleventh assignment of error) that the trial court erred in refusing to grant a larger reduction in the verdict. For the same reason, we need not discuss respondent's argument that the trial court erred in reducing the verdict.

Respondent asks us to review the action of the trial court in giving certain instructions and refusing to give others. All of these instructions and proposed instructions pertain to the question of liability, which we have resolved in respondent's favor.

The judgment is reversed and the cause remanded, with direction to grant appellant a new trial on the question of damages only. Appellant will recover its costs on this appeal.

GRADY, C. J., MALLERY, SCHWELLENBACH, FINLEY, and WEAVER, JJ., concur.

OLSON, J. (dissenting)—I cannot agree that it was not error for the trial court to submit to the jury the issue of negligence, based upon the allegation that the bus door was left opened and unattended. For this reason, I would grant a new trial upon the issue of liability. I am also of the opinion that the issue of negligence, based upon the stopping of the bus seven feet from the curb, should not be submitted to the jury upon the next trial of this case.

This conclusion ordinarily would foreclose any discussion of the assignment of error based upon the excessive amount of the verdict. But it is discussed by the majority, and I feel obliged to express my disagreement with their conclusion on it.

The majority seem to have no doubt that the issue of liability presents a question for the jury in this case. They also seem to have no doubt that it is within our province to determine the propriety of the jury's answer to this question by a consideration of their result, that is, the size of the verdict they returned. If this be true in any case, then it appears that we must say that this verdict is impeached by its excessiveness.

The majority opinion demonstrates that decedent had not been employed gainfully for six or seven years. His wife supported him and their family. His various physical infirmities, and his habit of intoxication, are described. These latter facts make it appear unlikely that he would have lived, let alone have produced any income, for the number of years shown in the life expectancy table for a man of his age.

The verdict of the jury totaled fifty-five thousand dollars. It awarded his widow thirty thousand dollars, which is approximately twenty-five hundred dollars per year for the entire period of his life expectancy. It also awarded an arbitrary sum of one thousand dollars per year for each child during the minority of that child. The apparent assumption is that, for at least the first seven years, decedent would have produced fifty-five hundred dollars per year for his family.

" . . . the pecuniary loss sustained by the statutory beneficiaries for whose benefit the action is prosecuted," is the measure of damages in a wrongful death action. *Kramer v. Portland-Seattle Auto Freight*, 43 Wn. (2d) 386, 391, 261 P. (2d) 692 (1953). The cited case states other elements which may be considered by the jury (p. 395 *et seq.*), and the instructions in this case included those factors. Allowing the jury the latitude it should have, and bearing these factors in mind, this verdict exceeds "any realistic appraisal of the damages suffered" by the beneficiaries. The forty per cent reduction in the award to the widow, made by the trial court to meet its conclusion that the verdict "is a trifle excessive," appears to indicate its similar view. A new trial

492

upon both the issue of negligence and that of damages would remove the unmistakable shadow cast upon the outcome of this case by the size of the present verdict.

HILL and DONWORTH, JJ., concur with OLSON, J.

December 28, 1954. Petition for rehearing denied.