(Decided 8th June, 1892.)

---

## THE NORTHERN CENTRAL RAILWAY COMPANY *vs* JOHN O'CONNER.

*Right of Railroad Company to pass Rules in regard to the Admission of Passengers to its Trains—Defaced ticket— Action for Refusal to Receive ticket—Measure of Damages—Punitive damages—Case of Phil., Wilm. & Balto. Railroad Co. vs. Rice, 64 Md. 63, distinguished from this case.*

A railroad company has the right to pass rules and regulations in regard to the admission of passengers to its trains, provided such rules are reasonable, and do not subject the passenger to unnecessary inconvenience and annoyance.

It may, for its protection, require passengers to exhibit their tickets to the gateman in passing to the train, and the latter may, in the exercise of his judgment, refuse to allow any one to pass through the gate on a defaced ticket. But the company is

responsible for the wrongful and injurious exercise of judgment on the part of its agents.

To hold that a passenger who has bought a ticket, and in good faith presents it to the gateman in the same condition as when he got it from the ticket agent, is obliged to go to the receiver's office and get his indorsement, because its genuineness has been questioned by the gateman, would not only subject him to great inconvenience, but in many cases it would be impossible to get such indorsement in time to take the train.

But if the ticket be so defaced by the act or negligence of the passenger as to make the date illegible, the gateman has the right to refuse to honor it, and to refuse to allow him to pass to the train, and for such refusal no action will lie.

On the other hand, if the ticket was so blurred or defaced at the time it was delivered to him by the ticket agent at the station where it was purchased, and it was presented at the gate in the same condition as when he got it, and the gateman refused to allow him to pass, the passenger himself, being without fault, is under no obligation to get the endorsement of the ticket receiver, and for such wrongful refusal by the gateman the defendant is liable.

In an action against the company by a passenger for the refusal to accept his ticket, the plaintiff will be entitled to recover, in the absence of malice or wantonness or circumstances of aggravation, such damages only as were the immediate and necessary consequences resulting from the wrongful act of the defendant, that is to say, the expenses incurred by him by reason of the defendant's refusal to allow him to enter its car, the amount paid for another ticket, compensation for loss of time, hotel expenses, if any, incurred, and, in addition to these, for the inconvenience suffered by him, if it be such as is capable of being ascertained and assessed at a money value.

Where in such action the facts were, that in refusing to accept a return coupon the gateman assigned as a reason for so doing, that the date looked as if it had been rubbed out on purpose, and then that he referred the plaintiff to the ticket receiver, and that the plaintiff returned, saying he could not find the receiver's office; and further, that the gateman himself had time before the departure of the train, and without neglecting his other duties, to have reported the case to the receiver, and failed or refused to do so, it was HELD :

Northern Central Railway Co. *vs.* O'Conner.

1st. That these facts in themselves would not warrant the jury in finding that the gateman acted with a wanton or reckless indifference to the plaintiff's rights.

2nd. That the gateman had no right to use offensive or insulting language towards the plaintiff, and if he did, such conduct on his part would be evidence from which the jury would be justified in awarding exemplary or punitive damages.

3rd. That in saying the date looked as if it had been rubbed out on purpose, such language might be construed as an insinuation, at least, that the date had been rubbed out by the plaintiff, but from the evidence it did not seem that the language was so used, nor that it was understood by the plaintiff as being used, in an offensive or insulting manner.

4th. That, as to the refusal or neglect of the gateman to report the case to the receiver, the proof showed that it was his duty to stand at the gate until the departure of the train, and it would have been a breach of duty to have left the gate for this or any like purpose.

5th. That this being an action for a breach of contract, it is unlike *Rice's Case*, 64 *Md.*, 63, which was an action of trespass *vi et armis*, and the ruling in that case does not apply to it.

APPEAL from the Circuit Court for Harford County.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiff offered the five following prayers, (a sixth prayer offered was refused, and is omitted):

1. If the jury find that the defendant on the 27th day of November, in the year 1889, operated a railway between Texas in Baltimore County and the City of Baltimore, and the plaintiff, on said date, bought at the station of the defendant, at Texas, an excursion ticket to said city, good for the round trip on the day of its issue, and used the first coupon thereof about midday of said date, and presented himself with the return coupon of said ticket on the evening of the day of its

issue at the entrance gate to the train leaving Calvert
Station for Texas at half-past eleven o'clock, and the
ticket examiner at said gate looked at said coupon and
refused to admit the defendant to said train, and that
said coupon was not afterwards used by the plaintiff,
then the plaintiff is entitled to recover in this action,
unless they shall further find that said ticket was muti-
lated [or defaced while in possession of] the plaintiff
so that the date of its issue could not be seen, and that
the defendant's agents could not otherwise [by the use
of ordinary care and diligence] ascertain plaintiff's
rights thereunder prior to the departure of said train.

2. If the jury find for the plaintiff under his first
prayer, [that is to say, if they shall find the return
ticket offered in evidence was in substantially the same
condition of legibility when it was shown to the gate
examiner at Calvert Station by the plaintiff as when it
was received by the plaintiff from the defendant's agent
at Texas, and from the conductor on the down train;]
and further find the defendant's ticket examiner, in de-
clining to accept said return coupon, gave as his reason
for so doing that the date was rubbed out, and it looked
as if it had been done on purpose, and the plaintiff told
said examiner the ticket had been bought that day and
he had ridden on the other coupon which the defendant
then had, and he (the examiner) could compare them
and see for himself, and the examiner thereupon referred
plaintiff to defendant's ticket receiver, telling him said
receiver's office was up those stairs, pointing to a stair-
way near by, and the plaintiff went up said stairs but
failed to find said office, and returned again to the gate
where said examiner was, and told the latter he could
not find anyone up-stairs, and again asked said examiner
to admit him to the train or see about the ticket him-
self, but was refused, and that there was sufficient time
after plaintiff presented the ticket at the gate and

Northern Central Railway Co. *vs.* O'Conner.

before the train started, for the examiner to have reported the facts to the receiver, which he could then and there have done without neglecting his other duties at the gate, but which he failed and refused to do, these are facts from which, if found by the jury, they are at liberty to find that the refusal to accept said coupon and admit the plaintiff to said train, was made, not merely in disregard of plaintiff's rights, but with a wanton or reckless indifference to such rights, and in an aggravated manner.

3. If the jury find in favor of the plaintiff under his first prayer, then they should give him such damages as were the immediate and direct consequences naturally resulting from the wrongful refusal of the defendant's agents to permit him to take the train he applied for.

4. If the jury find for the plaintiff under both his first and second prayers, then they may allow him not merely such damages as they may find to have been the direct and immediate consequences of the defendant's refusal to admit him to the train he applied for, but also such other damages as under all the circumstances of the case they may find will compensate him for the wanton or reckless indifference shown to his rights by the defendant's agents, and for the aggravated manner in which said refusal was made, if the jury find such wanton and reckless indifference and aggravated refusal.

5. If the jury find for the plaintiff under his first prayer [that the return ticket offered in evidence was in substantially the same condition of legibility when it was shown by the plaintiff to the gate keeper as when it was received by the plaintiff from the defendant's agent,] and shall also find that defendant's agent, the gate keeper, Chrystal, could by the exercise of reasonable diligence have ascertained plaintiff's right to be transported to his home, at Texas, on the train he sought to take, and that said gate keeper refused or

neglected so to inform himself, and said publicly, in the presence of the plaintiff and of all other persons who were then in and about the public railroad station in Baltimore, that the ticket the plaintiff presented to him was a scratched ticket, or a rubbed ticket, and that in his opinion the rubbing had been done on purpose, that then the jury can allow the plaintiff not only the amount of his actual and necessary expenses incurred by reason of the refusal to allow him to take the train he desired, but in addition thereto such damages as the jury may believe he has suffered in his person and feelings by reason of said unlawful acts.

The defendant offered the two following prayers, and exception to the plaintiff's prayers:

1. If the jury shall find from the evidence that the defendant on November 27th, 1889, at Texas, a station on the line of the Northern Central Railroad, issued and delivered to the plaintiff a ticket reading that it was good on the day of its date only for a passage from Texas to Baltimore and return, and the date of November 27th, 1889, was [legibly] stamped on said ticket when so issued and delivered to the plaintiff, and that the plaintiff rode to Baltimore from Texas on said day, on the cars of the defendant, using for the passage the portion of said ticket good for said ride, and that the ticket offered in evidence is the remaining portion of said ticket, and that when the said ticket so offered in evidence, was offered by the plaintiff to the gateman at Calvert Station, on the night of said November 27th, 1889, the date which had been so stamped thereon was [not legible but was] in such condition that the gateman could not by the exercise of ordinary care and diligence ascertain that the date thereon was November 27th, 1889, and for this reason the gateman, acting under the printed rule and regulation offered in evidence, refused to allow the plaintiff to pass through the gate on said ticket to enter the cars; and that said

gateman explained to the plaintiff that he could not allow him to pass through the said gate on said ticket, in the condition it then was, but told him to go upstairs to the office of the ticket receiver at said station, and show said ticket to him, and that said ticket receiver had authority to endorse said ticket good for passage on said train, if satisfied it had been purchased on said day, and that the plaintiff did not go to said office, although he had sufficient time so to do, then the plaintiff cannot recover in this action, and the verdict of the jury must be for the defendant; and the Court further instructs the jury, that the printed rule and regulation No. 6, offered in evidence, is a reasonable rule and regulation which the company had a right to make, and is binding on the plaintiff:

2. If the jury shall, under the other instructions of the Court, find a verdict for the plaintiff, then in estimating the damages they shall only allow the sum of forty-one cents, the cost of a ticket from Baltimore to Texas, as shown by the evidence, and the actual loss sustained by the plaintiff by absence from his business for one day, one dollar and forty cents, as shown by the evidence, which losses he was put to by reason of not being allowed to take the train on the night of November 27th, 1889.

Defendant's special exception to prayers granted the plaintiff:

The defendant hereby specially excepts to the granting of the plaintiff's second prayer, as amended by the Court, because there is no legally sufficient evidence that the ticket offered in evidence, was, at the time it was issued and delivered to the plaintiff, defaced, or that at said time the date thereon was illegible or indistinct.

The defendant hereby specially excepts to the plaintiff's fourth and fifth prayers as granted, and to each of

them, because there is no legally sufficient evidence on which the plaintiff, under the pleadings in this case, can recover any other amount, by way of damages, than the price of a ticket from Baltimore to Texas, and the value of a day's labor said by him to have been lost to him in consequence of the refusal of the agents of the defendant to allow him to enter the said train on the night of November 27th, 1889.

(The words in brackets in the several prayers were inserted by the Court.)

The Court (WATTERS, J.,) overruled the defendant's special exceptions to the plaintiff's second, fourth and fifth prayers, and granted all his prayers, except the sixth which was rejected, and granted the defendant's first prayer and rejected its second prayer.

The defendant excepted. The jury rendered a verdict for $1,000 in favor of the plaintiff, and judgment was entered thereon. The defendant appealed.

The cause was argued before MILLER, ROBINSON, IRVING, BRYAN, FOWLER, McSHERRY, and BRISCOE, J.

*Charles H. Carter*, and *Bernard Carter*, for the appellant.

*S. A. Williams*, and *G. L. Van Bibber*, for the appellee.

ROBINSON, J., delivered the opinion of the Court.

This is an action to recover damages for the refusal by the defendant's agent, to allow the plaintiff to pass through the gate to the train, then about to leave the Calvert Station.

The plaintiff, a lime burner by trade, bought of the defendant's agent a round trip ticket from Texas Station to Baltimore, good for two days and paid therefor sixty-

Northern Central Railway Co. *vs.* O'Conner.

eight cents. The conductor on the train to Baltimore tore off the Baltimore coupon, and handed the return coupon back to the plaintiff. On the evening of the same day, the plaintiff exhibited the return coupon to the gateman, who after examining it and finding the date thereon illegible, even by the aid of a strong electric light, told the plaintiff, that the ticket was in bad condition, and that he could not make out the date, and refused to allow him to pass through to the train. The plaintiff insisted that it was in the same condition as when he got it from the ticket agent at Texas Station. This explanation, however, was not satisfactory, and after some words between the plaintiff and the gateman, the ticket was handed to a police officer then on duty at the station, who after examining it, said the *"date was rubbed out,* and it looked as if it had been rubbed out on purpose." The gateman then said *"this is what I told him."* The plaintiff still insisting upon his right to pass through; the gateman told him to take the ticket to the receiver's office up stairs, and his endorsement would make it all right. The plaintiff started up stairs, but how far he got there is some conflict in the testimony. Be that as it may, in a very short time he returned, and said he could not find the receiver's office, and demanded that he should be allowed to pass to the train, threatening at the same time to sue the company if the gateman refused. Thereupon the latter called the conductor of the train, and showing him the ticket, asked if he would honor it, to which he replied "No." In a few minutes the train left, and the plaintiff was obliged to remain in Baltimore till the next morning.

The defendant offered in evidence the following rule adopted by the defendant company in regard to defaced tickets: "When outlawed or mutilated tickets, or tickets upon which the limit has expired, are presented at the gate, holders should be refused admittance to the trains,

and referred to the ticket receiver for investigation of the case who will decide the matter."

The defendant it is claimed has the right to pass rules and regulations in regard to the admission of passengers to its trains, and that if the return coupon was defaced, and the date thereon illegible when it was exhibited to the gateman, and the latter referred the plaintiff to the receiver for his endorsement of the ticket, and the plaintiff refused to take it to the receiver, then he is not entitled to recover in this action, even though the jury should find that the ticket was not in fact defaced or blurred by the act of the plaintiff, and was in the same condition as when he got it from the defendant's agent at Texas Station. To this we cannot agree. The defendant has the right no doubt to pass rules and regulations in regard to the admission of passengers to its trains, provided such rules are reasonable rules, and do not subject the passenger to unnecessary inconvenience and annoyance. It may, for its protection, require passengers to exhibit their tickets to the gateman in passing to the train, and the latter may in the exercise of his judgment refuse to allow one to pass through the gate on a defaced ticket. But in this, as in other like matters, the defendant is responsible for the wrongful and injurious exercise of judgment on the part of its agents. The gate, as the record shows, is opened a few minutes only before the train is to leave the station. And how long it would take the receiver to examine and pass upon the validity of a ticket referred to him, depends as he testifies upon the circumstances. He would be obliged to see whether he had the corresponding coupon, and this might involve the examination he says in some cases of a thousand tickets. And to hold that a passenger who has bought a ticket, and in good faith presents it to the gateman in the same condition as when he got it from the ticket agent, is obliged to go to the receiver's office

and get his endorsement, because its genuineness has been questioned by the gateman, would not only subject him to great inconvenience, but in many cases it would be impossible to get such endorsement in time to take the train. And besides, suppose the receiver refuses to endorse the ticket, it can hardly be contended that his judgment is binding and conclusive as against the passenger. At the same time we agree, that if the return coupon was so defaced by the act or negligence of the plaintiff as to make the date illegible, the gateman had the right to refuse to honor it, and to refuse to allow him to pass to the train, and for such refusal no action would lie.

On the other hand, if the ticket was so blurred or defaced at the time it was delivered to him by the ticket agent at Texas Station, and it was presented at the gate in the same condition as when he got it, and the gateman refused to allow him to pass, the plaintiff being himself without fault, was under no obligation to get the endorsement of the ticket receiver, and for such wrongful refusal by the gateman the defendant is liable. So the defendant has no reason to complain of the plaintiff's first prayer nor of the rejection of its second prayer.

And this brings us to the question in regard to the measure of damages, and the law in this respect is well settled. In the absence of malice, or wantonness or circumstances of aggravation, the plaintiff was entitled to recover such damages only as were the immediate and necessary consequences resulting from the wrongful act of the defendant; that is to say, the expenses incurred by him, by reason of the defendant's refusal to allow him to enter its car, the amount paid for another ticket, compensation for loss of time, hotel expenses, if any, incurred, and, in addition to these, inconvenience suffered by him, may be ground of damages if it is such as is capable of being ascertained and assessed at a money value. *Baltimore and Ohio Railroad Company vs. Carr,*

71 *Md.*, 135.   There was no error, therefore, in granting the defendant's third prayer.   The rule laid down in defendant's second prayer, that in estimating the damages the jury should allow merely the sum of forty cents being the cost of a ticket from Baltimore to Texas Station, and the further sum of one dollar and fifty cents being the actual loss sustained by the plaintiff by absence from his business, is rather too narrow, and the prayer was properly refused.   We cannot agree, however, with the Court below, that the facts set forth in plaintiff's second prayer would justify the jury in finding that the refusal by the gateman to accept the return coupon and to allow the plaintiff to pass to the train, was made not merely in disregard of his rights, but with a *wanton or reckless indifference to such rights.* · Now what are these facts?   First, that in refusing to accept the return coupon, the gateman assigned as a reason for so doing that the date looked as if it had been rubbed out on purpose, and then that he referred the plaintiff to the ticket receiver, and that he returned saying he could not find the receiver's office, and further that the gateman himself had time before the departure of the train and without neglecting his other duties to have reported the case to the receiver, and failed or refused so to do. · We cannot agree that these facts in themselves would warrant the jury in finding that the gateman acted with a wanton or reckless indifference to the plaintiff's rights.   He had no right, we agree, to use offensive or insulting language towards the plaintiff, and if he did, such conduct on his part would be evidence from which the jury would be justified in awarding exemplary or punitive damages.   And we agree too, that in saying the date looked as if it had been rubbed out on purpose, such language may be construed as an insinuation, at least, that the date had been rubbed out by the plaintiff. But the plaintiff, it is clear, did not so understand it, nor

Northern Central Railway Co. *vs.* O'Conner.

did he consider it offensive, for it seems to have made no impression upon him. On the contrary, it had entirely escaped his recollection, and the evidence in regard to it was brought out by the gateman himself, who says that after examining the ticket the police officer told the plaintiff it looked as if the date had been rubbed out on purpose, which, the witness added, is "the same *thing I told him.*" So it does not seem that the language was used, nor was it understood by the plaintiff as being used, in an offensive or insulting manner. Then, as to the refusal or neglect of the gateman to report the case to the receiver, the proof shows that it was his duty to stand at the gate until the departure of the train, and it would have been a breach of duty to have left the gate for this or any other like purpose. And there was error therefore in granting the plaintiff's second and fourth prayers.

Nor can we agree, that these facts would warrant the jury in allowing not only such damages as they may find to have been the direct and immediate consequences of the defendant's refusal to admit the plaintiff to its train, but in addition thereto, such other damages as they may believe he has suffered in his person and feelings. The case of *Phil., Wilm. and Balto. R. R. Co. vs. Rice,* 64 *Md.,* 63, relied on in support of this instruction, differs widely from the case now before us. In *Rice's Case* the plaintiff had purchased a round trip ticket from Wilmington to Philadelphia, and on the trip to Philadelphia the conductor by mistake cancelled the return coupon. Afterwards finding out his mistake, he attempted to correct it, by writing on the return coupon, "*cancelled by mistake,*" and handing it back to the plaintiff, said "I have fixed it all right now, you can ride on it." The mistake, however, it seems was not corrected in accordance with the rules of the company, and when the plaintiff presented the coupon to the conductor on the train from Philadelphia to Wilmington, he refused to

accept it, and demanded of the plaintiff that he should pay full fare on the return trip; this the plaintiff refused to do, and he was forcibly ejected from the car. He then brought an action of trespass *vi et armis* against the company, and, being wholly without fault, we said that if the servants of the company under such circumstances, laid their hands forcibly on the person of the plaintiff, and compelled him to leave the car, there was not merely a breach of contract on the part of the company, but an unlawful interference with the person of the plaintiff, and an indignity to his feelings, for which an action will lie, and for which he is entitled to be compensated in damages. And this, too, even though the servants of the company acted without malice, and used such force only as was necessary. Such damages were not allowed as punitive damages, but as compensatory damages for the unlawful interference with the person of the plaintiff, and the indignity to which he was thus exposed in being forcibly ejected from the car. But the action in this case is for a breach of contract, and not an action of trespass *vi et armis*. It is not alleged nor is there any proof to show that the gateman used any force or violence, or interfered in any manner with the person of the plaintiff, and the rule laid down in *Rice's Case* has no application to this case.

There being error in granting the plaintiff's second, fourth and fifth prayers, the judgment must be reversed, and new trial awarded.

*Judgment reversed, and*
*new trial awarded.*

(Decided 8th June, 1892.)