[No. 12295. Department One. July 22, 1915.]

J. A. CAUGHREN et al., *Appellants*, v. B. KAHAN et al., *Respondents*.[1]

TRIAL—PROVINCE OF COURT AND JURY—DIRECTING VERDICT OR JUDGMENT. A directed verdict, or judgment notwithstanding the verdict, can only be granted where the court can say, as a matter of law, that there is neither evidence, nor reasonable inference from evidence, to sustain the verdict of the jury.

PRINCIPAL AND AGENT—AUTHORITY OF AGENT—IMPLIED AUTHORITY—EVIDENCE—SUFFICIENCY. The evidence warrants a finding that an agent and bookkeeper of a firm of railroad contractors had implied authority to sell scrap iron, where it appears that he had repeatedly sold scrap iron from his employer's yards to the same purchaser, who on one occasion had been authorized to negotiate with the agent therefor; and it is immaterial that the agent absconded without accounting for the proceeds.

TRIAL—INSTRUCTIONS—"PREPONDERANCE OF EVIDENCE." It is not error to instruct as to the preponderance of the evidence, that what is meant is the best evidence—that which appeals to the jurors' in-

[1]Reported in 150 Pac. 445.

telligence as being the most probable, and as establishing certain facts.

PRINCIPAL AND AGENT—AUTHORITY OF AGENT—EVIDENCE—CUSTOM. Upon an issue as to the authority of an agent and bookkeeper for railroad contractors to sell scrap iron, it is not admissible to prove a custom or usage in that city for railroad contractors generally to have a man in charge of the office authorized to sell and dispose of such material; in view of the fact that the contractors were not merchants or engaged in trade.

PRINCIPAL AND AGENT—AUTHORITY OF AGENT—IMPLIED AUTHORITY —INSTRUCTIONS. Instructions, considered as a whole, held to properly state the rules relating to the apparent or implied authority of an agent of railroad contractors to sell scrap iron to one who had previously made purchases from such agent.

APPEAL—REVIEW—DISCRETION—NEW TRIAL. The discretion of the trial court in refusing to grant a new trial will not be disturbed on appeal, where there was some evidence and inferences from evidence sufficient to warrant the verdict.

Appeal from a judgment of the superior court for Spokane county, Sessions, J., entered January 2, 1914, upon the verdict of a jury rendered in favor of the defendants, in an action of replevin. Affirmed.

*Voorhees & Canfield,* for appellants.

*Zent, Powell & Redfield,* for respondents.

HOLCOMB, J.—In an action of replevin brought by appellants against the respondents, tried before a jury, the jury returned a verdict for the respondents and found the value of the property to be $900. From a judgment entered thereon, this appeal is taken.

The property in controversy was a quantity of iron rails and scrap iron which had been theretofore used in the business of appellants. Appellants are a firm of railroad contractors having an office in Spokane, Washington. Mr. Caughren, one of the members of the firm, resides at Sauk Center, Minnesota. Woldson, the other member, resides in Spokane and is in general charge of the business of the firm. They have a warehouse and yards at Hillyard in which they

store such tools, rails, and appliances owned by them for use in their business of railroad construction as are not in actual use. One Dreifus was a dealer in second-hand machinery and hardware in Spokane. For about four years prior to March, 1913, one Rich had been employed by appellants as a book-keeper in their office in Spokane. In March, 1913, Rich attempted to sell to Dreifus a quantity of second-hand railroad iron. Dreifus was to pay $800 for the iron, and resold to Kahan & Falk Company, defendants, for $900. The authority of Rich, apparent or real, to make this sale was the principal issue at the trial.

Appellants insist that Dreifus' dealings were not with them, but were with Rich individually and not as agent. It was well established at the trial, and indeed there was no contention by Dreifus but that the property belonged to Caughren & Wold-son, and unless the evidence is conclusive that neither real nor apparent authority has been conferred upon Rich as agent, or that the transaction was collusive between him and Dreifus, as principal and not as agent for appellants, the sale was not fraudulent and would pass the title to Dreifus and thence to respondents. It is conceded, of course, that the respondents obtained no better title than their vendor, Dreifus, had. The appellants contend that, because of certain writings made at the time of the transaction, viz., two checks made in favor of Rich individually by Dreifus, and one receipt to Dreifus signed by Rich individually, it is shown conclusively that Dreifus was dealing at the time with Rich individually and relying on Rich as his vendor; that, if he had dealt with Caughren & Woldson, he would have named them as payee in the checks, and he would likewise have taken their receipt for the purchase price instead of taking the receipt of Rich. It must be remembered that these writings were not such writings as are required by any statute, and are not conclusive evidence of the transaction or of the nature of the transaction.

Under the testimony introduced by respondents, it appears that, for about four years prior to March, 1913, Rich had

been employed by appellants as their bookkeeper in their office at Spokane. About three years prior to March, 1913, Rich had undertaken to sell to Dreifus certain scrap iron, amounting in all to about twenty-five tons, for $75. Rich then went with Dreifus to appellants' yards at Hillyard and directed the watchman, who was a brother of Martin Woldson, to deliver this scrap iron to Dreifus, which was done. Dreifus was engaged from that time for three weeks in hauling away from appellants' yards this scrap iron. Dreifus paid Rich the cash for this purchase. About a year after that transaction, Rich undertook to sell certain car wheels which had become useless for construction purposes, and directed the same watchman to deliver these car wheels to Dreifus at Hillyard. This was done, and the car wheels were loaded on a car at the yards and were shipped out by Dreifus. The agreed price between Rich and Dreifus was paid to Rich in cash. It appears also that, some three or four months previous to March, 1913, Dreifus went to the office of appellants and, for the first time, as he testified, saw and talked to Mr. Woldson. Woldson then asked Dreifus what his business was. Dreifus replied that he wanted to buy some forty-pound rails. Woldson replied: "I am busy; talk to Mr. Rich." Dreifus did talk to Rich about it, but no sale was made at that time. This is the only conversation which, according to Dreifus' testimony, he ever had with Mr. Woldson. This conversation is denied by Mr. Woldson, but, as appellants concede, under the intendment which follows the verdict of the jury, the facts are to be taken as above recited.

Early in March, 1913, Rich called on Dreifus at his place of business and talked with him about selling certain steel rails at Hillyard. They went together to Hillyard and looked at the rails. An agreement was reached between them by which Dreifus was to purchase 900 serviceable rails for $800, and in addition thereto was to receive a number of bent rails which were to be paid for by him at four dollars per ton. Rich then directed the watchman at appellants' yards to load

out 900 steel rails, but told the watchman that the rails were for the use of Caughren & Woldson at Trinidad, a point in central Washington where they were doing railroad construction. Rich employed one Hawkes to load these rails on cars, and they were loaded on two flat cars at appellants' storage yards at Hillyard. They were billed out at Hillyard by the Great Northern Railway Company in the name of Caughren & Woldson, per Rich, as railroad contractors, denominating the shipment as contractors' supplies. They were billed to Caughren & Woldson at Spokane, and upon arrival at Spokane the freight was paid by Rich. Four hundred dollars of the purchase price was paid to Rich by Dreifus on March 18, and a check for $400 given him, which was post-dated March 24. Dreifus had resold the goods to respondents for $900, receiving $800 of said sum. The goods were delivered to, and unloaded at, respondents' warehouse in Spokane on March 25. On about March 25th, Rich disappeared.

The appellants assign, among other errors, the following, which may be considered together: (1) That the court erred in refusing appellants' request for a peremptory instruction to the jury to find a verdict in favor of plaintiffs; and (2) that the court erred in denying the motion of appellants for a judgment *non obstante veredicto.*

If there were any fact or inference upon which the jury would be justified in finding a verdict in favor of respondents and against appellants, neither the appellants' motion for a peremptory instruction to find in their favor, nor their motion after the verdict for a judgment *non obstante veredicto,* could be granted. As to the last motion, it has been repeatedly held by this court that it invokes no element of discretion. It invokes a purely judicial function of the trial court, and of this court on review. It can only be granted when the court can say, as a matter of law, that there is neither evidence, nor reasonable inference from evidence, sufficient to sustain the verdict. *Brown v. Walla Walla,* 76 Wash. 670, 136 Pac. 1166; *Forsyth v. Dow,* 81 Wash. 137, 142 Pac. 490.

There is no implication to be derived from the evidence, as shown by the record in this case, that Dreifus believed, or had any reason to believe, that, in regard to the transaction in controversy, he was dealing with Rich as principal. The only question of fact to be determined under the evidence was whether or not Rich, as agent, had actual or apparent and implied authority to sell the goods to Dreifus. The fact of Rich's authority to sell his principal's goods was one not necessary to be determined by direct evidence, but might be inferred from certain other facts, as, for instance, the previous course of dealing between him and third persons. Appellants erroneously suppose that, because Dreifus testified that his dealings were with Rich, that he bought from Rich, that he paid Rich, and that he took a receipt from Rich, he was expressly dealing with Rich as principal. We do not so understand. The evidence shows that he knew that Caughren & Woldson were contractors for railroad construction; that they owned the yards from which he had previously and repeatedly bought old iron at Hillyard through Rich; that Rich was their bookkeeper in the Spokane office, and that one of the appellants as a principal had previously authorized Dreifus to negotiate for old iron with Rich. Upon these facts, if the jury believed his testimony, they were justified in inferring that Dreifus dealt with Rich as agent, and that, from the previous conduct of their business by appellants through Rich, he had apparent authority to sell the old iron. It is true that Rich never accounted to his principals for the proceeds of the sale, and that they were defrauded of the purchase price thereof; but it is a well-established principle of equity and justice that when one of two innocent persons must suffer by the fault of a third, the loss shall fall upon him who has enabled such third person to do the wrong. *Hall v. Hinks,* 21 Md. 406. We therefore think that the denials of the motions for instructed verdict and for judgment notwithstanding the verdict were proper.

The appellants' next assignments of error, numbered 3 and 4, relate to the giving of certain instructions and portions of instructions, the first defining the issues involved between the parties under the pleadings, the second defining preponderance of evidence, which we do not consider erroneous. Instruction No. 1 complained of, defining the issues, stated them as fairly to the appellants as was possible. The second, in defining the term "preponderance of evidence," defined it as follows:

"By the term 'preponderance of evidence' as I have used it in these instructions.is meant the best evidence—that which appeals to your intelligence as jurors and as men and women versed in the ordinary affairs of life as being the most probable happening and being the most probable event. Now, the evidence which satisfies your mind on that score is always the best evidence; it is always the evidence that is entitled to your consideration, and that is what the law means when it uses this expression 'preponderance of evidence.' It means evidence of that character, evidence which appeals to your judgment and to your intelligence as establishing certain facts."

While this definition of preponderance of evidence may not be the best definition possible, we do not consider it erroneous. It is not, as appellants suppose, to be confused with the legal meaning of "legal best evidence," but only applies to that which the jury were told might be by them considered the best evidence.

The next assignment of error is in giving the first portion of an instruction numbered 3, relative to the consideration by the jury of proof of custom and usage of the business as evidence of the authority of the agent. This calls for more serious consideration than any of the other assignments of error. During the trial of the case, the respondents attempted to introduce proof that "it was the custom and usage of the people in this line of business generally to sell and dispose of the used material and waste about their yards, and that it was customary to have a man in charge of the office attend

to that line of work; that he generally does it, and, as Mr.
Dreifus had been in the habit of going about these offices and
inquiring of the men at the office and doing business with
them; and that that course of dealing is customary among the
railroad contractors here in the city [Spokane]." Upon an
objection to this offered evidence, the same was rejected. The
instruction in question seems possibly to take cognizance of
the very facts which were themselves rejected.

It seems to us, under the circumstances of this case, that
the evidence was properly rejected. These appellants were
not in any merchandise or vending business. They were rail-
road contracting builders. The conduct of their business
sometimes, but not regularly, rendered advisable the sale of
unused appliances and materials, such as were sold in this in-
stance. The question whether or not they had expressly or
apparently authorized any of their agents to sell this ma-
terial was for the jury. The remainder of the instruction
complained of, together with instruction No. 4, which follows
it, properly instructed the jury how to judge of the authority
of the agent Rich from the course of dealing permitted by
the principals with third persons, and to determine whether
or not he had apparent authority in the matter of the trans-
action in controversy. Had the appellants been merchants
and their employee, Rich, a salesman, or had he been a selling
agent of any kind for them, general custom and usage of the
trade or business in which he was engaged would form part of
his authority. Proof of such usage is admitted only when
the agency has been first shown, and then not to enlarge the
powers of the agent, but only to show the extent of the powers
actually conferred. 31 Cyc. 1331.

It is encyclopedic law also that, as between the principal and
the agent, the scope of the latter's authority is that authority
which is actually conferred upon him by his principal, which
may be limited by secret instructions and restrictions. Such
instructions and restrictions do not affect third persons
ignorant thereof, and as between principal and third persons,

the mutual rights and liabilities are governed by the apparent scope of the agent's authority, which is that authority which the principal has held the agent out as possessing, or which he has permitted the agent to represent that he possesses, and which the principal is estopped to deny. The apparent authority, so far as third persons are concerned, is the real authority, and when a third person has ascertained the apparent authority with which the principal has clothed the agent, he is under no further obligation to inquire into the agent's actual authority. The authority must, however, have been actually apparent to the third person who, in order to avail himself of rights thereunder, must have dealt with the agent in reliance thereon in good faith and in the exercise of reasonable prudence, in which case the principal would be bound by acts of the agent performed in the usual and customary mode of doing such business, although he may have acted without, or in violation of, private instructions, where such acts are within the apparent scope of his authority. 31 Cyc. 1331-1333.

These principles were given to the jury in the remaining portion of instruction No. 3 complained of, and instruction No. 4, which is also complained of. But those instructions were correct, and it may be assumed that that portion of instruction No. 3 complained of referred to acts of the agent performed in the usual and customary mode of doing business by the appellants in disposing of their old and unused material, and not to the usual and customary mode of contractors generally in the city of Spokane, for the court had expressly excluded testimony of such character, of which the jury must have been well aware. There were no other conflicting instructions given by the court which might have tended to confuse the jury. In further instructions the court fully and clearly instructed the jury in line with appellants' theory that, if they found that Rich did not pretend to act as agent for appellants and that Dreifus dealt with him as principal, their verdict must be in favor of plaintiffs (instruction

No. 5) ; that if they found in the transaction in controversy that Rich purported to act as agent for the plaintiffs, but further found that plaintiffs had never authorized him to make sale of their property, their verdict should be in favor of the plaintiffs. In this connection they were further instructed that the fact that plaintiffs employed Rich as bookkeeper would not imply any authority to sell the property of plaintiffs (instruction No. 6). They were further instructed that no act or conduct or declaration of any kind by Rich would prove any authority in him to sell plaintiffs' property, unless it was further found from the evidence that such acts or conduct or declarations were either actually known to and acquiesced in by the plaintiffs, or were of such a nature and character that a reasonably prudent person situated as plaintiffs were situated would have known of such acts, conduct or declarations prior to the time of the dealings between Rich and Dreifus (instruction No. 7). They were further instructed that, before they could find that Rich had authority to sell the property involved, they must either find that, before the transaction in controversy, plaintiffs expressly conferred such authority upon him, or that plaintiffs themselves did some affirmative act or acts, or knew, or as reasonably prudent men should have known, of the acts, conduct or declarations by Rich which amounted to an assertion of such authority, and failed to disaffirm the same (instruction No. 8). They were further instructed, in three separate instructions, that it was incumbent upon the defendants to show by a fair preponderance of the evidence that the conduct of Dreifus in dealing with Rich was such that a reasonably prudent man, situated as Dreifus was situated, acting with honesty and fairness, would not have known that Rich was acting fraudulently, or such that a reasonably prudent person so situated would have inquired as to the authority of Rich to make the same; and that if Dreifus, situated as he was, should have known or believed that the transaction was dishonest on the part of Rich and was made with fraudulent intent, then that Dreifus' pur-

chase would not deprive plaintiffs of their title; that Dreifus could obtain no title by such sale, and that defendants would have none. They were further instructed that the burden of proof was upon the defendants to establish the fact that Rich was the agent of plaintiffs and had authority to make the particular sale in question, and the honesty and good faith of such sale by a fair preponderance of the evidence. Upon these instructions as a whole, it seems clear that the appellants could not have been prejudiced by the giving of the portion of instruction No. 3 complained of, and that the jury could not have been misled thereby.

The last error relied upon by appellants is that the court erred in refusing a new trial and entering judgment on the verdict. The trial court heard and saw the witnesses and was familiar with all the evidence introduced at the trial, and exercised his discretion in denying the motion for a new trial. There is some evidence and inferences to be derived from the evidence which, if believed by the jury, were sufficient to warrant them in finding a verdict for the respondents. We do not feel justified, therefore, in interfering with the discretion exercised by the trial court in denying a new trial.

Finding no prejudicial error in the record, the judgment is affirmed.

MORRIS, C. J., MOUNT, and PARKER, JJ., concur.