[No. 14283.   Department Two.   January 7, 1918.]

T. L. FENLON et al., Appellants, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Respondent.[1]

CARRIERS—RELATION—SPECIAL CONTRACT. The relation of passenger and carrier arises where a railroad company agreed to stop its passenger train at a station which was not a regular passenger station and sold plaintiff a ticket from such station for such train; making it the duty of the carrier to exercise the degree of care due to a passenger, and liable in tort for failure to stop its train and transport the plaintiff, although there was no duty to do so but for its special contract.

SAME — FAILURE TO TRANSPORT — FORM OF ACTION. An action against a railroad company for damages for failure to transport a passenger sounds in tort and not in contract.

SAME—FAILURE TO TRANSPORT—MEASURE OF DAMAGES. The measure of damages for failure to transport a passenger whose necessities were imperative is such damages as proximately resulted from the breach; and includes injuries sustained through exposure and illness contracted in attempting to make the trip on foot.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered March 17, 1917, in favor of the defendant, notwithstanding the verdict of a jury ren-

[1]Reported in 169 Pac. 863.

dered in favor of the plaintiffs, in an action in tort.  Reversed.

*M. F. Ryan*, for appellants.

*Geo. W. Korte* and *Cullen, Lee & Matthews*, for respondent.

ELLIS, C. J.—Action by the holder of a first-class ticket from Falcon, Idaho, to Roland, Idaho, points on defendant's railroad line, for damages claimed as resulting to plaintiff wife through failure of defendant to stop its train at the initial point, take on and carry her to the point of destination.

Both stations are situated in the Bitterroot Mountain district in Northern Idaho.  Roland is east of Falcon about ten miles as the railroad runs, and something less than two miles by trail through a canyon.  Falcon is not a regular passenger station, but there is maintained there a depot, a regular station agent, and two telegraph operators.  Though passenger trains do not regularly stop there, it is not an unusual thing for them to stop and take on or discharge passengers, permission first being obtained from the chief train dispatcher or division superintendent at Missoula, Montana.

On January 16, 1916, plaintiffs and a young brother of plaintiff wife resided about 300 yards from the depot at Falcon.  On that morning the plaintiff husband became very ill.  The wife, a young woman of twenty-four years, believed that it was necessary at once to remove him to a hospital in Spokane to save his life, but found that she had not sufficient money to pay the fare.  Thinking that she could secure it from a friend at Roland, if she could see him personally, she applied to the station agent at Falcon for permission to take the afternoon east-bound train to that point, advising the agent of the circumstances, as she testified, or, as the agent testified, that it was "a case of sickness."  Her intention was to return on a later train and take her husband on the early

morning west-bound train to Spokane. The agent thereupon telephoned to the train dispatcher at Missoula, in turn advising him that it was a case of sickness, and through him secured from the superintendent permission for the train to stop at Falcon and carry the woman to Roland. The agent, telling her that the permission was granted, sold her a printed first-class ticket for thirty cents, reading, "Good for one first-class passage, Falcon, Idaho, to Roland," the word Roland being written with a pen. The train being reported late, she waited at the depot for about two and a half hours, when, at about 4:20 p. m., the train passed without stopping. Though a timely order had been given by the dispatcher at Missoula to the agent at Avery, a station some distance west of Falcon, to tell the train conductor to make the stop at the latter point, it is admitted that the agent at Avery failed to do so. Plaintiff wife testified that she then asked the station agent if she could not go upon a freight train, but was informed that such permission would not be granted. The agent denied this, but testified very positively that permission to ride upon freight trains was never granted. Later a "helper" engine passed Falcon going east and stopped about two minutes for orders. It is asserted that the woman might have ridden on this engine to Roland, but there is no positive evidence that any such order was given, the dispatcher testifying that he had authority to order it to carry her, but had neither memory nor record that he did so. It is certain that she was never advised of such a possibility. The jury made a special finding to that effect.

After the train had passed, she returned to her home, made arrangements to have a man remain with her husband and, at about 6:30 in the evening, together with her brother, a youth of seventeen, started on foot over the trail through the canyon, arriving at Roland at about nine o'clock in a state of exhaustion, her forehead being frozen. There was some conflict in the evidence as to whether or not the evening was stormy, but it is admitted that the snow over the

trail was six feet deep and that the temperature was near zero. The woman soon developed a severe bronchial trouble and became weak, pale and emaciated, which condition, there was evidence tending to show, resulted from the exposure and hardship incident to the trip over the trail. The evidence was conclusive that there were no other means of reaching Roland save by train or on foot by the trail.

At the close of plaintiffs' evidence, defendant moved for a nonsuit, which was denied. The jury returned a verdict for plaintiffs in the sum of $300. Defendant moved for judgment *non obstante veredicto*, and in the alternative for a new trial. The former motion was granted, the latter was not passed upon. Plaintiffs appeal. Hereinafter for convenience we shall refer to plaintiff wife as the appellant.

Appellant insists that there was evidence tending, either directly or by reasonable inference, to establish every element essential to a recovery, and invokes the familiar rule that the motion for judgment *non obstante veredicto* involves no element of discretion and can be granted only when it can be said, as a matter of law, that there is neither evidence nor reasonable inference from the evidence sufficient to sustain the verdict. *Brown v. Walla Walla*, 76 Wash. 670, 136 Pac. 1166; *Forsyth v. Dow*, 81 Wash. 137, 142 Pac. 490; *Caughren v. Kahan*, 86 Wash. 356, 150 Pac. 445. It is argued that respondent, having sold appellant a ticket and agreed to stop the train, receive her and carry her from Falcon to Roland, was under a duty to do so; that the evidence shows that she reasonably believed herself under a compelling necessity to reach Roland that evening, hence she was justified in making the trip on foot; that respondent knew of this necessity and, for that reason and to meet it, sold her the ticket and agreed to stop the train; that the exposure and consequent injury was a proximate result of respondent's failure to stop the train, for which respondent is liable in damages as for a tort.

Respondent counters with the contention that, inasmuch as Falcon was not a regular passenger station and respondent owed the public no duty to stop its passenger trains there, its promise to do so was a mere gratuity which did not create the relation of carrier and passenger, hence appellant could sue only on the contract and not in tort, and that there can be, therefore, no liability for the failure to stop the train, beyond the price paid for the ticket. This position is not tenable, either in its premises or conclusion. Of course, the relation of carrier and passenger always arises from contract, express or implied. The fact that the relation contemplated in this instance arose out of a special contract is immaterial. Respondent is a common carrier. It contracted as such and, by the contract, it did not seek to limit its liability as a common carrier in any way. The mere fact that the contract was special did not divest respondent of the character of a common carrier. It could hardly be contended, had the train stopped and received appellant, that she would not thereafter have been entitled to every degree of care that any passenger wherever received could have demanded.

"On whatever terms a common carrier of persons voluntarily receives and carries a person, the relation of common carrier and passenger exists." *Walther v. Southern Pac. Co.*, 159 Cal. 769, 116 Pac. 51, 37 L. R. A. (N. S.) 235.

See, also, *Schuyler v. Southern Pac. Co.*, 37 Utah 595, 109 Pac. 464 (on rehearing).

True, Falcon was not a passenger station, but it became such for the nonce by contract as between the parties with all the attendant rights and liabilities, regardless of any published schedule.

"In a complaint by a ticket holder for failure to stop the train on which he is traveling at the station named in his ticket, it is necessary to show that the regulations of the railroad company provided that the train should stop at such place; and so, also, in order to put the railroad company in the wrong, in a complaint for failure to stop a train

to receive the ticket holder, it should be made to appear that it was the duty of the company toward the ticket holder to so stop the train. But the company may make a special arrangement for the stopping of a particular train at a certain station at which under the general rules and regulations it is not required to stop. Such a contract is not unlawful, and the breach of it whereby the ticket holder, induced to take passage under it, is prevented from returning to his home as contemplated by the contract, by reason of the failure to stop the train, would entail upon the railroad company liability for violation of duty." *Evansville & Terre Haute R. Co. v. Wilson*, 20 Ind. App. 5, 50 N. E. 90.

Obviously, therefore, appellant was an incipient passenger from the moment when respondent agreed to accept her as such and sold her the ticket. She was then entitled to that high degree of care due to a passenger. *Grimes v. Pennsylvania Co.*, 36 Fed. 72; *Buffett v. Troy & Boston R. Co.*, 40 N. Y. 168; *Central R. & Banking Co. v. Perry*, 58 Ga. 461; *Allender v. C. R. I. & P. R. R. Co.*, 37 Iowa 264; *Young v. New York, N. H. & H. R. R. Co.*, 171 Mass. 33, 50 N. E. 455, 41 L. R. A. 193. Thenceforth she was a recognized prospective passenger—as much so as any one could be when present and accepted as such at any station or under any form of contract, express or implied. Thenceforth respondent was under the same degree of care to stop the train and take her on that it would have been to carry her to her destination and there discharge her had she actually embarked. In such a case, this court has held, in common with the American courts generally, that the action for the breach of the duty to complete the carriage properly lies in tort. *Willson v. Northern Pac. R. Co.*, 5 Wash. 621, 32 Pac. 468, 34 Pac. 146. That the same rule applies where damage results from the failure to stop and take on a passenger is established by ample authority. *Williams v. Carolina & N. W. R. Co.*, 144 N. C. 498, 57 S. E. 216, 12 L. R. A. (N. S.) 191; *Purcell v. Richmond & D. R. Co.*, 108 N. C. 414, 12 S. E. 954, 956, 12 L. R. A. 113; *Yazoo & M. V. R. Co. v.*

*White,* 82 Miss. 120, 33 South. 970; *Yazoo & M. V. R. Co. v. Mitchell,* 83 Miss. 179, 35 South. 339; *Mobile & O. R. Co. v. Reeves,* 25 Ky. Law 2236, 80 S. W. 471.

We are clear that this action properly sounds in tort and not in contract. But it may be noted in passing that the distinction urged by respondent between the action viewed as one on contract or as one in tort is immaterial when applied to the facts before us. In this state the damages recoverable would be only compensatory and not punitive in either case. The measure of damages under the peculiar facts in this case, and for all practical purposes, would be the same. Viewed as an action on the contract, the measure would be such damages as might reasonably be anticipated from the breach; that is to say, damages reasonably within the contemplation of the parties. Viewed as an action in tort, the measure would be such damages as proximately resulted from the breach, which, under the circumstances here, comes to the same thing, since the respondent, knowing appellant's necessities, must be held to have foreseen all the damages proximately resulting from its failure to stop the train.

Respondent next contends that, in any event, appellant's illness was not a proximate result of its failure to stop the train as promised. It is argued that, since she admitted that, if the permission to stop had not been given, she would have walked to Roland any way, therefore the injury to her caused by the walk was not a proximate result of respondent's failure to stop its train. The argument is specious. It might as well be argued that she would have had to walk had there been no railroad there; in fact, she so testified. Such an argument, if sound at all, would relieve the railroad company from liability for failure to stop its trains even at regular passenger stations. It would reduce the duty to stops trains anywhere to a mere matter of caprice or, as respondent argues was the case here, to a mere gratuity. The illness of her husband placed appellant under a necessity as imperative as can well be conceived of making the trip to Ro-

land and back before the arrival of the morning train going east to Spokane. At least, whether she acted as a reasonably prudent person would have acted under similar circumstances was clearly a question for the jury. It is fairly inferable from the evidence that respondent knew of the purpose of the trip and of its imperative necessity. This, also, was plainly a question for the jury. It makes no difference that respondent might have refused to agree to carry her or sell her a ticket. It did not refuse either. It sold her the ticket and agreed to stop the train. Its duty to her to stop the train was then as complete as it ever is to the general public to stop trains at regular stations. Had respondent kept this promise she would not have been injured. Demonstrably, therefore, the injury from making the trip on foot was a proximate result of respondent's failure to keep its promise. It was the cause without which, under the conditions, the injury would not have been suffered. The material thing is that she would not have had to walk had the train stopped for her. Obviously, therefore, the failure to stop was the proximate cause, both of the trip over the trail and the injury resulting.

"Damages for the refusal to permit a passenger to take a train which his ticket entitled him to take include the amount paid by him for another ticket, compensation for loss of time, unnecessary hotel expenses, and also compensation for any inconvenience suffered. Generally speaking, the negligent failure of a carrier to stop its train for a passenger, who thereupon endeavors to reach his destination by other proper means, renders it liable to him for illness, pain, suffering, physical injury, personal discomfort, loss of time, disappointment, inconvenience, and expense, such as the cost of lodging or a conveyance, resulting directly and proximately from the carrier's wrongful act." 5 R. C. L. 104.

The text is amply sustained by the authorities. *Williams v. Carolina & N. W. R. Co.*, 144 N. C. 498, 57 S. E. 216, 12 L. R. A. (N. S.) 191; *Milhous v. Southern R. Co.*, 72 S. C. 442, 52 S. E. 41, 110 Am. St. 620; *Mobile & O. R. Co. v.*

*Reeves, supra; San Antonio & A. P. R. Co. v. Safford* (Tex. Civ. App.), 48 S. W. 1105; *Brown v. Chicago, M. & St. P. R. Co.,* 54 Wis. 342, 11 N. W. 356, 911, 41 Am. Rep. 41; *Northern Central R. Co. v. O'Conner,* 76 Md. 204, 24 Atl. 449, 35 Am. St. 422, 16 L. R. A. 449; Hutchinson, Carriers (3d ed.), §§ 1424, 1429.

The cases cited by respondent do not militate against the conclusion which we have reached. They rest upon the ground that, notwithstanding the initial fault of the carrier, the injured person cannot recover for injuries resulting from exposure wantonly or needlessly encountered by him. This is but an application of the elementary rule that the injured person may not needlessly augment but should minimize the damages. *Le Beau v. Minneapolis, St. P. & S. M. R. Co.,* 164 Wis. 30, 159 N. W. 577, L. R. A. 1917A 1017; *Indianapolis, B. & W. R. Co. v. Birney,* 71 Ill. 391.

The judgment is reversed, and the cause is remanded with direction to the trial court to pass upon the motion for a new trial and either grant it or enter judgment upon the verdict.

MOUNT, MORRIS, HOLCOMB, and CHADWICK, JJ., concur.