[No. 36717-0-I.   Division One.   November 12, 1996.]

TRUMAN SHELLEY, ET AL., *Appellants*, v. UNITED AIR LINES, INC., *Respondent*.

*David A. Williams*, for appellants.

*Daniel R. Laurence* and *Mills Cogan Meyers Swartling*, for respondent.

GROSSE, J. — Truman and Rachel Shelley appeal the dismissal of a personal injury suit on summary judgment. They claim the trial court erred in finding United Air Lines, Inc. (UAL) owed them no duty of care as a matter of law or, in the alternative, that UAL fulfilled any duty of care it may have owed to them. Additionally, the Shelleys claim the trial court erred in failing to grant their motion for summary judgment against UAL. We agree with the trial court and affirm the dismissal of the Shelleys' personal injury suit.

The Shelleys are senior citizens who flew on UAL to Se-

attle from their home in Wisconsin.[1] Before leaving home, requests were made for wheelchair assistance for both Mr. and Mrs. Shelley upon their arrival at the Seattle-Tacoma airport. Mrs. Shelley was able to walk, but thought she might need a wheelchair if she was required to do a lot of walking. They exited the plane unassisted. The Shelleys were met at the gate by their adult daughter, her boyfriend, and their daughter's 4-year-old nephew. Unfortunately, only one wheelchair was available at the time. Mr. Shelley sat in the wheelchair brought by the skycap. When told that only one wheelchair was available, Mrs. Shelley decided to walk. Her daughter specifically inquired of her whether she was sure she could make it without a wheelchair. Mrs. Shelley said she was fine and that she could make it.

The group left the gate and took the elevator down to the shuttle train. They took the train to the main terminal and entered another elevator. Mrs. Shelley and her daughter exited the elevator on the baggage claim level and the others went up to the sky bridge level to go to the car. After picking up the luggage, Mrs. Shelley and her daughter walked to the elevator from the carousel area. There was a waiting line to use the elevator, so they decided to use the escalator, even with their baggage cart. Mrs. Shelley and her daughter got on the escalator, but part way up Mrs. Shelley fell and fractured her arm.

The Shelleys sued UAL, alleging it breached a duty of care to provide wheelchair assistance. They claimed that had a wheelchair been available Mrs. Shelley would have used it and she would have waited for the elevator, thereby avoiding the escalator and the fall. Mr. Shelley alleges the loss of consortium. On cross motions for summary judgment the trial court granted UAL's motion holding that it did not have a common carrier's duty of care to Mrs. Shelley at the time she fell and, even if UAL had a

---

[1]The first part of their journey was on a UAL express carrier from their home in Wisconsin to Chicago. From Chicago to Seattle the Shelleys were passengers on planes operated by UAL.

duty, it fulfilled the duty as a matter of law. The Shelleys appeal.

■ This court engages in the same inquiry as the trial court.[2] The question to be decided here is whether as a matter of law UAL had a duty to provide Mrs. Shelley with a second wheelchair at the time of her injury or if the duty of the common carrier had ceased at that time. There being no significant dispute of fact for purposes of a summary judgment motion, whether this duty exists is a question of law.

The Shelleys' action against UAL is premised on a theory that UAL breached its duty of care as a common carrier to protect Mrs. Shelley from harm as specially agreed to by their request for assistance. A common carrier owes its passengers the highest degree of care.[3] The question here is when this duty terminates.

■■ A common carrier's duty of care owed to its passengers ends when the passengers disembark unless the carrier's employees have actual knowledge of a passenger's incapacity *and* a particular risk of harm resulting therefrom.[4] The Shelleys claim that UAL had actual knowledge of Mrs. Shelley's infirmity because they requested two wheelchairs and the airline assisted them at other airports. Although UAL concedes these facts, the record supports its argument that Mrs. Shelley indicated she could make it through the airport *without* a wheelchair. Even in her deposition, Mrs. Shelley stated that she requested the wheelchair not because she was incapable of walking safely, but because she was afraid she would not be able to walk "a long ways" through some airports. In

---

[2]*Food Servs. of Am. v. Royal Heights, Inc.*, 123 Wn.2d 779, 783, 871 P.2d 590 (1994); *Our Lady of Lourdes Hosp. v. Franklin County*, 120 Wn.2d 439, 443, 842 P.2d 956 (1993); *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

[3]*Zorotovich v. Washington Toll Bridge Auth.*, 80 Wn.2d 106, 108, 491 P.2d 1295 (1971); *Torres v. Salty Sea Days, Inc.*, 36 Wn. App. 668, 674, 676 P.2d 512, *review denied*, 101 Wn.2d 1008 (1984).

[4]*Torres*, 36 Wn. App. at 674.

fact, she admitted, when confronted with the fact that only one wheelchair was available, she indicated she could make it through the airport without a wheelchair and proceeded accordingly.

The Shelleys rely on the case of *Fenlon v. Chicago, Milwaukee & St. Paul R.R. Co.*, 99 Wash. 289, 169 P. 863 (1918).[5] The *Fenlon* case holds that the contract of carriage creates and defines when the duty to a common carrier's passengers begins. The case here is closer in fact to those cases which define when the duty terminates. " 'In the absence of any unusual inherent danger, defect or obstruction in the place of alighting, [the carrier/passenger] relation ceases upon the alighting passenger gaining a secure and maintainable footing upon the street.' "[6] Here, any contract ended when Mrs. Shelley decided to go with her family and leave the arrival gate. This case resembles the cases of *Federal Ins. Co. v. Bonilla Colon*, 392 F.2d 662 (1st Cir. 1968), and *Vincenty v. Eastern Air Lines*, 528 F. Supp. 171 (D.C. P.R. 1981), which hold that airlines have no duty to protect someone after they leave the airplane even if the person is incapacitated if that person is in the company of family or does not request help. The *Bonilla Colon* court dismissed the passenger's claims, holding the airline could not be expected from mere observance of the 78-year-old plaintiff to have greater knowledge than her accompanying family regarding her alleged need for assistance in descending an airport staircase. The *Vincenty* court held that a 70-year-old woman who "herniated herself" retrieving her luggage

---

[5] In *Fenlon*, the plaintiff's husband was ill and she purchased a special rail ticket from Falcon, Idaho to Roland, Washington. The train did not ordinarily stop in Falcon, but special arrangements were made because of the emergency. The train failed to stop and the plaintiff set out on foot to go the two miles in the winter cold. She developed medical troubles and sued for personal injuries. The court found that the train company's duty to stop the train was as complete as it ever is to the general public to stop trains at regular stations. Had the train stopped and kept the promise, the plaintiff would not have been injured by her journey through the cold. The injury was proximately caused by the railroad's failure to keep its promise.

[6] *Torres*, 36 Wn. App. at 674 (quoting *Welsh v. Spokane & I.E. R.R.*, 91 Wash. 260, 262, 157 P. 679 (1916)).

was no longer the airline's passenger. The court reasoned that the hernia's cause was not the airline's refusal to permit her daughter into the baggage area, but was the fault of the traveler, who with complete knowledge of her condition, and without asking for help at that time, lifted a heavy suitcase. The court granted summary judgment to the airline, holding that the plaintiff failed to establish a duty of care, negligence, or that there was a causal relationship between any negligence and her injuries.

Here, not only is there a lack of any causal relationship, but the accident happened to someone who was no longer boarding or alighting from an aircraft. Mrs. Shelley was no longer a current passenger of UAL at the time of the accident. The operation of disembarking was terminated at the time she left the plane and reached a safe point inside the terminal. UAL owed her no further duty of care at that time in light of her failure to renew her request for assistance and her decision to walk on her own with her family after discovering that only one wheelchair was available. Considering the evidence, UAL has satisfied its burden of demonstrating that there is no genuine issue of material fact in accordance with CR 56(c), and it is entitled to judgment as a matter of law. The trial court did not err and we affirm the dismissal of the Shelleys' personal injury suit.

COLEMAN and WEBSTER, JJ., concur.

Review denied at 131 Wn.2d 1018 (1997).